**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, et al., <br><br> v. <br><br> BANK OF AMERICA, N.A., et al. | Civil Action No. SAG-18-1919 |

## MEMORANDUM

In this lawsuit, a coalition of nonprofit fair housing advocacy organizations and individual homeowners allege that in the years following the 2008 financial crisis, Bank of America, N.A. and Safeguard Properties Management LLC discriminated on the basis of race in their maintenance and marketing of real estate owned properties. Numerous motions are currently pending. This Court resolves one here: the defendants' Motion for Dismissal or Other Appropriate Relief Due to the Organizational Plaintiffs' Spoliation of Material Evidence. *See* ECF 153, ("Mot."). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the following reasons, this Court will grant the motion in part and permit the parties to introduce evidence and argument related to the spoliated material at trial.

## BACKGROUND

The opinion on the motion to dismiss outlined the comprehensive factual background to this litigation, so only a brief recap, followed by the detail needed to resolve the sanctions motion, is necessary here. *See* Mem., ECF 66. After the 2008 sub-prime mortgage collapse, Bank of America took ownership of a vast number of properties that it had foreclosed upon but not sold. Properties of this nature are known as "real estate owned properties" or "REOs." The bank contracted with Safeguard to manage many of its newly acquired REOs.

In the years following the mortgage crisis, the National Fair Housing Alliance ("NFHA") received complaints that Bank of America had failed to maintain and market its REOs in communities of color with the same rigor it devoted to white communities. Decl. of Lindsay Augustine ¶ 2, ECF 179-1. In response, plaintiff NFHA, together with a group of partner organizations who are also plaintiffs here, designed and conducted a nationwide investigation to test whether racial demographics in fact impacted the defendants' maintenance and marketing of particular REOs. *Id.* After a seven-year investigation, the plaintiffs concluded that there is a "substantial and statistically significant" disparity "between the routine exterior maintenance and marketing of Bank of America-owned homes in communities of color and the routine exterior maintenance and marketing of Bank of America-owned homes in predominantly white neighborhoods" that cannot be "explained by non-racial factors."[1] *See* Compl. ¶¶ 65, 80, 87, ECF 1.

This motion concerns the preservation of evidence related to the plaintiffs' investigation of Bank of America REOs. The plaintiffs' claims are predicated upon the objective, measurable disparities they allege exist between REOs in white and non-white communities. Those disparities are calculated using the aggregated results of the plaintiffs' in-person investigations of Bank of America properties in 37 cities across the country. Decl. of Lindsay Augustine ¶ 17. To conduct those on-site investigations, the plaintiffs dispatched teams of investigators to evaluate thousands of properties in carefully selected metropolitan areas. *Id.* ¶¶ 7-17. The plaintiffs trained investigators to score properties based on dozens of criteria they developed as a proxy for the quality of a property's "maintenance, marketing, and [] overall curb appeal." Decl. of Shanna L.

---

[1] This Court's references to "the plaintiffs" in this opinion refer to the organizational plaintiffs only. There is no allegation that the individual plaintiffs, though co-equal plaintiffs in this lawsuit, had any involvement in the issue litigated here.

Smith ¶ 5, ECF 178-2. Each criterion represented a possible "deficiency" in the maintenance or marketing of a property. Decl. of Lindsay Augustine ¶ 14. The more deficiencies, the worse the defendants' treatment of the property. And on the plaintiffs' logic, the greater the disparity between the average number of deficiencies in minority communities and otherwise comparable white communities, the greater the disparity in the defendants' treatment of properties based on race. Ultimately, the plaintiffs believe their evidence reveals a significant disparity in observed deficiencies between properties in white and minority communities, and as a result that the defendants treated properties in white communities more favorably than properties in communities of color.

In this way, the plaintiffs' bottom-line conclusions are the product of aggregating and analyzing thousands of individual evaluations conducted by scores of investigators over years of work. The accuracy and continuity of these investigations is, therefore, critical to the integrity of the plaintiffs' claims. Recognizing this, the plaintiffs put each investigator through "a rigorous two-day training program" where they educated trainees on identifying, evaluating, photographing, and recording deficiencies in REO properties. *Id.* Once trained, investigators were sent to the field in pairs to evaluate their assigned properties. *Id.* ¶ 17. At each location, the investigators took general photographs of the property, as well as specific photographs of each deficiency. *Id.* ¶¶ 17-18. They also recorded each deficiency in a standardized REO Evaluation Form provided by the plaintiffs. *Id.* ¶ 17.

After completing property evaluations, investigators delivered the results to their local office, where they or another trained staff member input the data collected in the REO Evaluation Form, all the photographs taken of the property, and any relevant additional notes into a central database. *Id.* ¶¶ 19-20. Once the data was uploaded, the plaintiffs retained or disposed of the paper

copies of the REO Evaluation Forms in accordance with the document retention policy of the relevant organization in possession of the form. *Id.* ¶ 24. As a final step, three NFHA executives—Shanna Smith, Shanti Abedin, and Lindsay Augustine—reviewed the entries and edited them "for standardization." *Id.* ¶ 25. Ms. Augustine attested in her declaration that these edits were mostly cosmetic—for example, adjusting the orientation of a photograph or fixing spelling—but at times included "reclassifying a deficiency" (which would not change a property's total deficiency score) or removing a deficiency not supported by photographic evidence (which would).

This motion arises from the defendants' concern with the plaintiffs' destruction of or failure to retain REO Evaluation Forms and their related practices for entering and standardizing REO evaluation data. The defendants contend that, in purporting to comply with their document retention protocols, the plaintiffs instead violated their duty to preserve relevant evidence related to reasonably foreseeable litigation by disposing of 284 out of the 307 REO Evaluation forms related to the properties at issue in this initial stage of the litigation (92% of the Phase II forms), and at least 750 of the total REO Evaluation Forms created in the broader investigation. Mot. at 6.

The defendants fear that absent the original surveys, the plaintiffs could have, and may have, selectively or inadvertently translated data from the REO Evaluation Forms into the central database in a manner favorable to their claims, and that the defendants will now be unable to identify such inaccuracies because most original copies of the evaluation forms no longer exist. They filed this motion to remedy that perceived harm.

## ANALYSIS

The defendants seek sanctions for the plaintiffs' alleged evidence spoliation under the court's inherent authority to remedy discovery-related misconduct. Imposing sanctions for evidence spoliation is appropriate where (1) the party in control of the evidence had an obligation

to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). Where these elements are satisfied, the "court has broad discretion in choosing an appropriate sanction," which "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). The defendants claim a sanction is warranted because NFHA and its partners intentionally disposed of the REO Evaluation Forms that supplied the data underlying the plaintiffs' database—and, by extension, this entire lawsuit—and that as a result, they are so irreparably prejudiced that the suit must be dismissed. This Court agrees that the plaintiffs have spoliated evidence but concludes a more moderate sanction is sufficient to remedy the harm.

### A. Timeliness

As a threshold matter, this Court considers the timeliness of the defendants' motion. There is no formal statute of limitations governing spoliation motions, but they should "be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009). Together with this underlying principle, courts in the Fourth Circuit consider five factors to assess the timeliness of a spoliation motion: (1) the time between the filing of the motion and the close of discovery; (2) the time between the filing of the motion and the filing of summary judgment motions; (3) the time between the filing of the motion and trial; (4) whether the court imposed a deadline for filing spoliation motions; and (5) the moving party's justification for not filing sooner. *See id.* at 506-08. Finally, courts also

consider the prejudice of any delay to the non-moving party. *See Membreno v. Atlanta Rest. Partners, LLC*, 338 F.R.D. 66, 76 (D. Md. 2021).

The court first considers how promptly the defendants moved for sanctions. The defendants here appear to have been on notice since at least June 2020 that the plaintiffs' productions lacked original copies of the REO Evaluation Forms. *See* Opp. to Mot. for Sanctions at Ex. 5 ¶ 3, ECF 178-6 ("Opp."). Nevertheless, the defendants waited sixteen months, until October 21, 2021, to raise the issue, even though they considered the documents' absence to reflect a "[s]erious deficienc[y]" in the plaintiffs' production. *Id.* at Ex. 5-B. The plaintiffs confirmed within days that they had produced all the requested forms in their possession, yet the defendants waited another six months to file this motion. *See id.* at Ex. 5-C. This amounts to nearly two years between the first concrete indication that the plaintiffs lacked complete records of the evaluation forms and the defendants' corresponding request for sanctions. All the while, the parties continued to engage in discovery despite the potential of this motion to alter the scope of discovery or obviate the need for it altogether.

The defendants explain the timing of their motion as predicated on a baseline assumption that the "Plaintiffs—experienced participants in federal court litigation—[would not have] intentionally destroyed the bulk of the property inspection reports." Reply in Support of Mot. for Sanctions at 5, ECF 195 ("Reply"). They attribute the delay between the plaintiffs' June 2020 production and their October 2021 letter in large part to this underlying assumption. *See id.* Once the plaintiffs confirmed the scope of the available surveys, the defendants indicate, they "reviewed the available evidence about the nature, scope, and prejudice of Plaintiffs' spoliation, met and conferred with Plaintiffs about their refusal to provide complete spoliation discovery as required by the Federal and Local Rules, and prepared and filed their Motion." *Id.*

The court is sympathetic to the defendants' position but is unconvinced it justifies a delay of this extent. The defendants' assumption that the plaintiffs preserved the evidence was, up to a point, reasonable. Likewise, the defendants' efforts to verify the existence and scope of the spoliation, after receiving the plaintiffs' October 2021 letter, were prudent. This is also a complex matter with many moving pieces that has imposed high demands on counsel for both parties. Still, the defendants' sixteen-month delay in seeking the missing documents is difficult to reconcile with their own characterization of the plaintiffs' production as self-evidently containing "[s]erious deficiencies," Opp. at Ex. 5-B, regarding documents upon which they believe "[t]his entire case is predicated," Mot. at 16. The subsequent six-month lapse between the receipt of the October 2021 letter, and the filing of this motion on the date on which summary judgment motions were previously due, is similarly troubling. *See* Stipulated Order Extending Deadlines, ECF 144. Considering all this, this Court finds that the defendants' explanation cannot fully justify the length of the delay and thus weighs moderately against the motion's timeliness.

The remaining *Goodman* factors either weigh further against the defendants or do not restore the balance. To start, the "least disruptive time to" file a spoliation motion "is *during* the discovery phase, not after it has closed," *Goodman*, 632 F. Supp. 2d at 508, and the defendants here waited until two months after Phase II discovery closed to file this motion, *see* Stipulated Order Extending Deadlines, ECF 139. Moreover, although the defendants ultimately filed this motion before their motions for summary judgment, that is only because the court granted the defendants' emergency motion to extend the summary judgment deadline, permitting the defendants to file this motion on the date their dispositive motion was previously due. *See* Emergency Mot. to Vacate Deadlines, ECF 146; Order, ECF 158. These factors counsel against permitting the motion. Against all this, the only *Goodman* factors favoring the defendants are that

they did not file this motion "on the eve of trial" and did not violate any court-imposed deadline for filing spoliation motions. *Goodman*, 632 F. Supp. 2d at 507-08. In other words, their timing could have been worse.

Although the length of the defendants' delay and the related *Goodman* factors suggest the motion is untimely, the court is conscious that even where a movant "has not provided a good reason for [their] delay," where the non-moving party's "misconduct is serious and [the non-movant is] not significantly prejudiced because of the delayed filing," the court should proceed to the merits of the sanctions motion. *Membreno*, 338 F.R.D. at 76. As the analysis below makes clear, the defendants allege a serious violation of the plaintiffs' duty to preserve. At the same time, the burden of additional discovery introduced by this motion is likely to be relatively minimal in the context of this case, the parties' summary judgment motions remain pending, and the motion will not independently delay a trial date. *See id.* at 75-76. Thus, the seriousness of the spoliation outweighs any undue prejudice of the motion, and the court will resolve it on the merits.

**B. Duty to Preserve**

Whether the plaintiffs had a duty to preserve relevant evidence during their investigations is undisputed. It is well-established that the "duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)). The defendants pin the plaintiffs' duty to preserve at no later than "the inception of their investigation" in May 2011. Mot.

8

at 13. And although the plaintiffs contest the relevance of the evidence at issue, they do not dispute that initiating their investigation triggered their duty to preserve relevant evidence. *See* Opp. at 11-16. So, for purposes of this motion, this Court finds the plaintiffs were under a duty to preserve relevant evidence when they disposed of the REO Evaluation Forms.

### C. Culpability

The dispute about the plaintiffs' state of mind is minimal. For spoliation to occur, the spoliator "must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction"—mere "negligent loss or destruction of evidence" is not enough. *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir.1995)); *see First Mariner Bank v. Resol. L. Grp., P.C.*, No. CIV. MJG-12-1133, 2014 WL 1652550, at *9 (D. Md. Apr. 22, 2014).[2] Intentionally spoliating evidence is sanctionable even where the evidence is destroyed in good faith. *See id.* (citing *Vodusek*, 71 F.3d at 155); *see Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008). "'Destruction is willful when it is deliberate or intentional,' whereas bad faith destruction occurs when a party engages in destruction 'for the *purpose of depriving the adversary of evidence.*'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011) (quoting *Powell v. Town of Sharpsburg*, 591 F.Supp.2d 814, 820 (E.D.N.C. 2008)). "Assessing the quantum of fault becomes appropriate when determining the appropriate sanction, not in deciding whether spoliation has taken place." *Id.* (collecting cases).[3]

---

[2] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

[3] The state of mind required to warrant sanctions for evidence spoliation is the subject of some dispute in the Fourth Circuit. *Compare First Mariner Bank*, 2014 WL 1652550, at *9 (quoting *Turner*, 736 F.3d at 282) ("The Fourth Circuit recently clarified" that spoliation "does not result merely from the negligent loss or destruction of evidence.") *with Eller v. Prince George's Cnty.*

The plaintiffs here intentionally destroyed the field evaluation forms. NFHA itself explains that it implemented a policy of "discard[ing] the paper versions of the evaluation forms . . . immediately after uploading the data or as soon as practicable," and invited its partners to do the same. Decl. of Lindsay Augustine ¶ 24. Such "intentional, purposeful, [and] deliberate" conduct satisfies the spoliation standard. *First Mariner Bank*, 2014 WL 1652550, at *9. And the plaintiffs should "have known that the evidence was relevant to some issue in the anticipated case," *Turner*, 736 F.3d at 282, because the forms were the only contemporaneous records of investigators' property assessments. It may well have been reasonable, and even prudent, for NFHA's quality control team to modify entries when constructing its database, but the defendants were still entitled to access the original forms to test NFHA's methodology.

The plaintiffs' conduct, albeit intentional, does not amount to bad faith. A party has acted in bad faith only where it spoliates evidence "for the purpose of depriving the adversary of evidence." *E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 497 (emphasis omitted) (quoting *Powell*, 591 F.Supp.2d at 820). There is no evidence of illicit motive here. To the contrary, NFHA's Senior Associate Director of Enforcement, Lindsay Augustine, represented in her declaration that NFHA disposed of the original copies of the evaluation forms to comply with its document retention policy, and instructed its partner organizations to follow their own document

---

*Pub. Sch.*, No. TDC-18-3649, 2020 WL 7336730, at *8 (D. Md. Dec. 14, 2020) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010)) ("In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset."). This Court need not resolve the debate here, however, because as explained below the plaintiffs' actions were intentional and thus culpable under any standard.

retention policies. Decl. of Lindsay Augustine ¶ 24. Ms. Augustine explained that NFHA considered the forms "preliminary drafts that contained rough notes" which "became duplicative" once "the relevant information on the forms . . . was saved to" NFHA's database. *Id.* NFHA President and Chief Executive Officer Shanna Smith corroborates this account, explaining in her declaration that NFHA's destruction of the forms is in line with the document retention protocol it has employed for over 30 years, one that, in its experience, has been consistently accepted for investigation and litigation purposes. *See* Decl. of Shanna L. Smith ¶ 10. NFHA's prior experience cannot contract the scope of its duty to preserve here, but it does suggest NFHA acted in good faith. Aside from the fact of the document destruction itself—which NFHA has explained adequately and under oath—the defendants have presented no direct or circumstantial evidence of improper motive.[4] So although NFHA's culpability is sanctionable, the degree of its culpability, and the corresponding need for a severe sanction, is moderated by its good faith.

---

[4] The parties dispute whether NFHA did, in fact, comply with its document retention policy. The defendants, obviously, contend that a deviation could be construed as a sign of impropriety or bad faith. The plaintiffs offer evidence that NFHA did comply, *see* Decl. of Lindsay Augustine; Decl. of Shanna L. Smith, whereas the defendants interpret the policy's text to suggest it did not, *see* Reply at 7 (quoting Document Protocols for NFHA Investigations, ECF 179-2, ("NFHA Retention Policy")). The court finds the text of the policy too ambiguous to compel the defendants' reading, and thus insufficient to rebut the evidence offered by the plaintiffs. *See* NFHA Retention Policy at 024903 (making it unclear whether NFHA's retention policy during "Investigations That Uncover Evidence of Non-Compliance" modifies the scope or the duration of NFHA's standard policy). In addition, NFHA's approach in this investigation provides circumstantial evidence of good faith. NFHA delegated decision making over whether to retain each particular tranche of surveys to the individual partner organization responsible for those surveys, resulting in the preservation of some originals and the disposal of others. The more logical approach, were NFHA engaged in deliberately concealing unfavorable survey results, would have been to apply NFHA's purportedly advantageous policy universally across the investigation. Furthermore, the investigators themselves were often responsible for their own data entry. Decl. of Lindsay Augustine ¶ 19. The defendants do not explain why, were the plaintiffs truly engaged in deliberately misrepresenting evidence, an investigator would accurately record deficiencies on the REO Evaluation Form in the field but then manipulate the results at the database entry stage, rather than rigging the data at the outset during the investigation.

**D. Relevance**

The central dispute in this sanctions motion is the relevance of the survey forms and the corresponding prejudice their absence inflicts. "In the context of spoliation, lost or destroyed evidence is relevant if 'a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'" *Eller v. Prince George's Cnty. Pub. Sch.*, No. TDC-18-3649, 2020 WL 7336730, at *9 (D. Md. Dec. 14, 2020) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 531 (D. Md. 2010)). If the spoliated evidence is relevant, sanctions are proper where "the absence of the evidence [is] prejudicial to the party alleging spoliation." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 531). As with culpability, the extent of the sanctions must be commensurate with the degree of the prejudice. *E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 499-500.

The defendants view the destroyed evidence as relevant and prejudicial because, at minimum, it "would have been relevant to Defendants' defenses regarding the accuracy and reliability of the database, the subjective nature of Plaintiffs' 37 criteria, Plaintiffs' inconsistent application of each criteria across the subject properties, and the inherent bias of Plaintiffs' employees changing the inspection results." Mot. at 18. At worst, the defendants fear that the plaintiffs could have used their database entry process to launder the investigation results in a manner that disproportionately reduced deficiencies on properties in white communities, thus improving the plaintiffs' litigation prospects. Reply at 18-19. The absence of the documents, the defendants say, deprives them of the opportunity to expose pro-plaintiff manipulation in the database, if this worst-case scenario occurred.

The plaintiffs, on the other hand, characterize the physical evaluation forms as flatly irrelevant because they merely represent preliminary notes about a property that were then fully

12

transposed into the database, either through written comments or through photographs, and thus the forms themselves contain no information not also captured in the database the plaintiffs produced. Opp. at 21, 23. Even if the notes were relevant, they continue, their absence is not prejudicial because the available sample indicates that the quality control process actually reduced the discrepancies between white and minority properties, "slightly weakening Plaintiffs' claims." *Id.* at 24.

To resolve the parties' competing characterizations of the missing evidence, this Court determines whether the moving party, here the defendants, has met its burden of "establish[ing] a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to [its] cause," while also bearing in mind that, in a spoliation case, the information available to the movant will naturally be incomplete. *Pandora Jewelry, LLC v. Chamilia, LLC*, No. 06-cv-3041-CCB, 2008 WL 4533902, at *9 (D. Md. Sept. 30, 2008). With respect to their worst-case scenario, the defendants have not met their burden. The defendants simply have no evidence that any changes made between the original forms and the initial database entry favor the plaintiffs' case.[5]

The plaintiffs, on the other hand, do provide evidence, and that evidence reduces the cause for concern. Ms. Augustine attests that most quality control "edits did not change the total number of deficiencies for a property," and therefore cannot have prejudiced the defendants. Decl. of Lindsay Augustine ¶ 25. Similarly, the plaintiffs' review of the 67 available survey forms shows that of the 224 handwritten notes on those forms, the relevant notes were fully captured in the final database, with only 3 exceptions. *Id.* ¶¶ 21-22. Moreover, although the 67 surveys are not a perfect

---

[5] The defendants offer evidence through their expert, Dr. Justin McCrary, about how the plaintiffs' dataset has evolved since the filing of the complaint. Mot. at 11 & n.30. That is not evidence, however, of differences between the plaintiffs' dataset and the REO Evaluation Forms themselves.

sample of the unavailable forms, the plaintiffs' empirical analysis of these forms suggests that, if anything, the alterations made between the original surveys and the final database favor the defendants. Decl. of Samantha Duckworth ¶ 17, ECF 178-18. The defendants' concerns, however natural, do not rebut this evidence, and are thus insufficient to demonstrate a "reasonable possibility" that the defendants manufactured survey results to improve their dataset. *Pandora Jewelry, LLC*, 2008 WL 4533902, at *9. The court will not impose the severe degree of sanctions such a conclusion would warrant.

The court agrees with the defendants, however, that the plaintiffs' spoliation inflicts a more modest degree of prejudice. As the motions for summary judgment indicate, the reliability and subjectivity of the plaintiffs' data collection methodology is a serious source of dispute in this case. And the improper spoliation of the REO Evaluation Forms hampers the defendants' ability to dispute the plaintiffs' evidence on both scores. As the plaintiffs themselves concede, even without any indicia of improper motive, the translation of relevant observations from the survey forms to the database was imperfect. Decl. of Lindsay Augustine ¶¶ 21-22. That human error alone, multiplied across hundreds of properties, could have provided the defendants with valuable evidence with which to impeach the accuracy of the database. At the same time, the missing forms hinder the defendants' ability to elicit disagreement between the NFHA moderators' characterizations of certain deficiencies and the field investigators' characterizations of the same deficiencies, divergences which the defendants could have used to support their position that the plaintiffs' evaluation metrics were overly subjective. For both these reasons, the court concludes the spoliation of the original survey forms has prejudiced the defendants and that a corresponding remedy is appropriate.

14

**E. Remedy**

The parties' views of the appropriate remedy for the plaintiffs' spoliation differ vastly. "When assessing what sanction to impose, courts consider the degree of culpability and the extent of the prejudice[.]" *E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 499–500. A spoliation sanction "should (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Victor Stanley, Inc.*, 269 F.R.D. at 534 (internal quotation marks omitted). In service of these principles, the sanctions available for spoliation include "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default." *Id.* at 533. Courts should select "the least harsh sanction that can provide an adequate remedy." *Eller*, 2020 WL 7336730, at *10. Here, the defendants seek dismissal—"the ultimate sanction for spoliation," *Silvestri*, 271 F.3d at 593—or, alternatively, to preclude the plaintiffs from introducing evidence related to any of the properties for which original survey forms do not exist. Although the plaintiffs believe no sanction is necessary, they contend that the court should at most permit the parties to call witnesses related to the spoliated documents or instruct the jury that the plaintiffs discarded the forms without a corresponding adverse inference instruction.

As discussed, the plaintiffs' conduct here was intentional, but was not carried out in bad faith. Similarly, there is no evidence that the absence of the original forms severely prejudiced the defendants, or indeed that the forms contained much evidence at all not captured in the database the plaintiffs produced. Although the court cannot deny the specter of bias that inevitably flows from a plaintiff discarding its own relevant evidence, it cannot impose sanctions based on

speculation, particularly where, as here, the available evidence indicates the extent of the prejudice is limited. Still, the court has concluded that the missing evidence does prejudice the defendants' ability to impeach the accuracy of the database and the objectivity of the plaintiffs' evaluation criteria. The defendants are entitled to a remedy for this prejudice.

A modest sanction can provide that remedy. The court is confident that the defendants can cure much of the harm themselves: they can attack the database's accuracy by reference to the more than 30,000 photographs the plaintiffs produced, and they can test the objectivity of the plaintiffs' metrics through independent witness examination. In the end, the problem is that they will be doing so with incomplete information. To fill this "hole in the evidence," the court will permit "all parties to present argument and evidence at trial regarding" the spoliated surveys. *Butler v. Kroger Ltd. P'ship I*, No. 2:19-cv-673, 2020 WL 7483447, at *9 (E.D. Va. Nov. 30, 2020), *report and recommendation adopted,* No. 2:19-cv-673, 2020 WL 7482186 (E.D. Va. Dec. 18, 2020). No harsher sanction is necessary or warranted.

## CONCLUSION

For the reasons explained above, the defendants' motion for sanctions is granted in part, and the court will permit the parties to introduce evidence and argument related to the spoliated material at trial.

A separate order follows.


|  |  |
|---|---|
| ___1/23/2023___ | ___/s/___ |
| Date | Stephanie A. Gallagher |
| | United States District Judge |