# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

NATIONAL FAIR HOUSING
ALLIANCE, *et al.*,

        Plaintiffs,

    v.

BANK OF AMERICA, N.A., *et al.*,

        Defendants.

Civil Action No. SAG-18-1919

**SURREPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT ON AVAILABLE REMEDIES**

In their Reply in support of their Motion for Summary Judgment on Available Remedies,

Defendants Bank of America, N.A. and Safeguard Properties Management, LLC assert that *FDA v.*

*Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), changed the law of organizational standing—as

applied previously by this Court—such that the fair housing organization ("FHO") plaintiffs in this

case may not seek compensation for any of their injuries endured because of Defendants'

discrimination. *Hippocratic Medicine*, however, does not represent the sea change that Defendants hold

it out to be. Instead, *Hippocratic Medicine* confirms that *Havens Realty Corp. v. Coleman,* 455 U.S. 363

(1982), remains good law—particularly in the unique context of FHOs. The Fourth Circuit has

recently confirmed the continued application of *Havens* and the limited impact of *Hippocratic Medicine*.

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*, --- F.4th ---, No. 24-2044, 2024 WL 4597030 (4th

Cir. Oct. 29, 2024). Because the FHOs in this case mirror the FHO in *Havens* (and differ from the

issue advocacy groups in *Hippocratic Medicine*) in terms of the core business activities they conduct in

furtherance of their missions and the ways in which Defendants' discriminatory REO maintenance and marketing directly impaired and undermined that work, they continue to have organizational standing and may seek compensation for their injuries.[1]

## ARGUMENT

### I.   *Havens* remains good law.

The Supreme Court made clear in *Hippocratic Medicine* that *Havens* remains good law; it simply distinguished a factual scenario far removed from the context of fair housing organizations enforcing the Fair Housing Act. In *Hippocratic Medicine*, anti-abortion doctors and associations formed purely for policy advocacy sued the U.S. Food and Drug Administration under the Administrative Procedure Act after the FDA made it easier for doctors to prescribe and for pregnant individuals to obtain mifepristone, an abortion medication. 602 U.S. at 372–73. Notably, none of the plaintiffs prescribed or used mifepristone and the FDA did not require "them to do or refrain from doing anything." *Id.* at 374. Instead, they had only "sincere legal, moral, ideological, and policy objections to mifepristone being prescribed and used *by others*." *Id.* at 386. The Court clarified that "a plaintiff's desire to make a drug less available *for others* does not establish standing to sue." *Id.* at 374.

*Hippocratic Medicine* stands for the unremarkable proposition that the "intensity of the litigant's interest" or its "strong opposition to the government's conduct" is not an injury sufficient to confer standing. *Id.* at 394. There is no tension here with *Havens*—indeed the Court quoted from *Havens* in noting that a "plaintiff must show 'far more than simply a setback to the organization's

---

[1] Defendants assume that the limits on which injuries confer standing mirror the limits on the injuries for which the FHOs can seek compensation. Yet they cite no authority suggesting that once an organization has standing to bring a lawsuit (based on any of its injuries-in-fact), it is limited to seeking damages only for those injuries that established standing. To the contrary, only one plaintiff in this case need have standing for the entire lawsuit to proceed and for all Plaintiffs to seek compensation from Defendants. *See Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 53 (2006); *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). If plaintiffs without standing can seek damages from a defendant simply by virtue of being the co-plaintiff of a party with standing, the recovery of damages cannot be limited to only those injuries that confer standing.

abstract social interests'" to establish standing. *Id.* (quoting *Havens*, 455 U.S. at 379). Both *Havens* and *Hippocratic Medicine* establish that advocacy organizations do not have standing to sue every time an actor takes a position contrary to theirs. In *Hippocratic Medicine*, the Court explained that it would not "extend the *Havens* holding beyond its context" to recognize an injury-in-fact whenever an advocacy group's positions were crossed. *Id.* at 396. Within the context of a defendant interfering with an FHO's ability to perform its core work promoting fair housing education and compliance, *Havens*' holding continues to apply.

The Fourth Circuit recently confirmed that *Hippocratic Medicine* did not upend its precedent on organizational standing. *See Republican Nat'l Comm.*, 2024 WL 4597030 at *3. In *Republican National Committee*, the Fourth Circuit considered whether two Republican political organizations had organizational standing to sue a state board of elections for its alleged violations of election law, which the organizations claimed required them to divert their resources away from core activities like voter outreach towards combatting election fraud. *Id.* at *3. In holding that the organizations had sufficiently alleged that the state board's failures had "concretely impaired their core missions" in a manner sufficient to confer standing, the Fourth Circuit considered the impact of *Hippocratic Medicine*. *Id.* It determined that this was not a case of an organization simply trying to "spend its way into standing," but akin to *Havens*, where the organization's "core mission is directly 'affected and interfered with.'" *Id.* (quoting *Hippocratic Med.*, 602 U.S. at 394, 395).[2]

In *Republican National Committee*, the Fourth Circuit relied on its pre-*Hippocratic Medicine* precedent holding that "when an action 'perceptibly impair[s]' an organization's ability to carry out its mission and 'consequent[ly] drain[s] . . . the organization's resources,' 'there can be no question that the organization has suffered' an injury-in-fact." *Republican Nat'l Comm.*, 2024 WL 4597030, at

---

[2] Courts outside the Fourth Circuit that have considered—after *Hippocratic Medicine*—the standing of organizations devoted to fair housing and independent living for individuals with disabilities (including one of the FHOs in the present case—the Fair Housing Center of Central Indiana) have also continued to apply *Havens* in finding organizational standing. *See Fair Hous. Ctr. of Cent. Ind. v. M&J Mgmt. Co.*, No. 1:22-CV-00612, 2024 WL 3859997, at *3 (S.D. Ind. Aug. 19, 2024); *Access Living of Metro. Chi., Inc. v. City of Chicago*, No. 1:18-CV-03399, 2024 WL 4346630, at *3 (N.D. Ill. Sept. 30, 2024).

*2 (quoting *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (alterations in original) (quoting *Havens*, 455 U.S. at 379)). The court further cited a 2021 case finding that an organization had standing "because its diversion of resources in response to defendant's actions impeded the organization's 'efforts to carry out its mission.'" *Id.* (citing *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 496–97 (4th Cir. 2021)).

The court emphasized that *Hippocratic Medicine*'s restrictions on organizational standing were not new in the Fourth Circuit. It noted that in *Lane v. Holder*, it had explained "that 'mere expense' does not constitute an injury in-fact where the decision to divert resources is not in response to a threat to the organization's core mission." *Id.* (quoting *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012)); *see also id.* ("We have consistently held that standing cannot be established on the sole basis of an organization's uncompelled choice to expend resources."). Accordingly, *Hippocratic Medicine* does not represent a departure from this Circuit's law of organizational standing. There is no reason to disturb this Court's previous ruling that the FHO Plaintiffs have organizational standing. *See NFHA v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 626–27 (D. Md. 2019).

## II.     The Plaintiff FHOs are like the FHO in *Havens* rather than the issue advocacy groups in *Hippocratic Medicine*.

The FHOs in the present case are like the FHO in *Havens*, not the anti-abortion advocacy groups in *Hippocratic Medicine*. Like HOME (the FHO in *Havens*), the organizational plaintiffs here are FHOs that are designated under federal law to enforce the Fair Housing Act and engage in education and outreach activities to further the goals of the Act. 42 U.S.C. § 3616a (requiring that the Secretary of Housing and Urban Development provide funding to "fair housing enforcement organizations" for them to conduct "investigations of violations of the rights granted under" the Fair Housing Act, and "enforcement activities," as well as a host of other educational and outreach efforts designed to "prevent or eliminate discriminatory housing practices"). They are not merely issue advocacy groups like the plaintiffs in *Hippocratic Medicine*, created solely to advocate for certain "abstract social interests." *Hippocratic Medicine*, 603 U.S. at 394; *see Republican Nat'l Comm.*, 2024 WL 4597030, at *3 (explaining that the plaintiff organizations in *Hippocratic Medicine* lacked standing

because they "expended resources only relevant to 'abstract social interests' in response to the FDA's approval of mifepristone, and not to their core mission").

As the Court explained, issue advocacy groups cannot establish standing simply by "spend[ing] a single dollar opposing those policies" they dislike. *Hippocratic Medicine*, 603 U.S. at 395. Instead, the defendant's actions must directly affect and interfere with the plaintiff organization's "core business activities"—like HOME's housing counseling and referral services. *Id.* Where it does, the organization's decision to expend resources to stop and counteract that harm is a sufficient injury to establish standing. That is the case with the FHOs here.

The Plaintiff FHOs are established organizations operating continuously, through permanently employed management and staff, as businesses that engage in activities to fulfill their missions of promoting equal housing markets, fair housing choice and access, and fair lending to eradicate discrimination and encourage neighborhood integration. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., ECF 295-23, Ex. A at 3–5, ECF 295-24, Am. Ex. B at 2, 3, 5–7, 12–14, 21–23, 29, 31–32, 34–35, 38–40, 43, 45–47, 62–63, 68, 74–75, 80, 82, 85–86, 90–91, 97–99, 102, 104, 108–09, 113–14, 119–20, 122. The FHOs' core activities advancing their missions include programs to ensure equal access to housing and to promote stable, integrated neighborhoods, for example by engaging in counseling, investigation of complaints of housing discrimination, foreclosure prevention work, and referral services for home-seekers. *See* Pls.' Opp'n to Defs.' Summ. J. Mot. re Available Remedies at 4, ECF 295.

As in *Havens*, Defendants' discriminatory practices impaired the FHO Plaintiffs' core business activities. The FHOs have already explained and provided evidence of how Defendants' discriminatory practices "exacerbate[d] economic inequality, racial segregation, crime, and neighborhood destabilization in . . . communities [of color]—all of which undermine[d] the FHOs' missions." *See* Pls.' Opp'n to Defs.' Summ. J. Mot. re Available Remedies at 29–30, ECF 295. And as fair housing expert Stacy Seicshnaydre has explained, "the mission of FHOs to educate every sector of the market and the general public about the benefits of integration requires that they vigorously fight perceptions that the vitality and stability of a neighborhood are forever linked to the

race of those who live there." Seicsnhaydre Rep. at 2, ECF 295-22. Thus, "[w]hen industry members or enterprises treat identifiably white and Black/Brown neighborhoods differently in their investment, maintenance, and marketing decisions, they cause FHOs direct harm" *Id.*

Specifically, Defendants' racially discriminatory maintenance and marketing of their REOs interfered with four broad categories of the FHOs' mission-central work: (1) promoting equal housing markets (including promoting housing choice and increasing neighborhoods of opportunity); (2) counteracting racial segregation in housing; (3) eradicating housing discrimination through counseling, complaint receipt, and enforcement; and (4) promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers. Attached as Appendix A is a non-exhaustive summary of the record evidence illustrating many of the FHOs' core activities in these four broad categories that Defendants impaired through their discriminatory maintenance and marketing of REOs.[3] The examples listed in Appendix A include the many activities Plaintiffs outlined in their Opposition to Defendants' Motion for Summary Judgment on Available Remedies, ECF 295. The Appendix outlines, for example, Fair Housing Advocates of Northern California's homeownership promotion work, designed both to promote equal housing markets and counteract racial segregation in housing—two goals impeded by Defendants' discriminatory conduct. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B at 14, ECF 295-24. Another example in Appendix A is the National Fair Housing Alliance's work training industry stakeholders on REO best practices, part of the organization's work to promote fair housing through educating and collaborating with housing industry members—a goal undermined by Defendants' discriminatory REO maintenance and

---

[3] The evidence Plaintiffs have already submitted pertaining to their core business activities remains sufficient to support organizational standing in this case. To the extent the Court finds it helpful for its consideration, Plaintiffs note that their submissions in the similar case of *National Fair Housing Alliance v. Deutsche Bank National Trust*, No. 18-CV-00839 (N.D. Ill.) provide additional details regarding their core business activities. *See, e.g.*, Decl. of Lisa Rice at 1–5, Ex. 3 to Pls.' Resp. to Defs.' Feb. 28, 2023 Filings, ECF 274-7 & Pls.' L.R. 56.1(b)(3)(C) Statement of Additional Facts Requiring Denial of Summ. J.—Joint Mot. at 110–33, ECF 361, *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Trust*, No. 18-CV-00839 (N.D. Ill.).

marketing. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Ex. A at 34, ECF 295-23. Defendants' discriminatory conduct also impaired the Fair Housing Council of Greater San Antonio's non-REO-related testing work aimed at eradicating housing discrimination—another goal set back by Defendants' discrimination. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B at 39, ECF 295-24. Defendants' discrimination interfered with and undermined the FHOs' core mission-centered activities and harmed the FHOs in two distinct ways: (1) it harmed their missions directly; and (2) it caused the FHOs to divert resources to stop the harm to their core business activities. Under *Havens* and *Hippocratic Medicine*, each of these harms constitutes an injury sufficient to confer organizational standing. *See Hippocratic Med.*, 602 U.S. at 395; *Havens*, 455 U.S. at 379.

As in *Republican National Committee*, "[t]his case involves more than simply an organization's efforts to 'spend its way into standing.'" 2024 WL 4597030, at *3 (quoting *Hippocratic Med.*, 602 U.S. at 394). Just as the Republican political organizations maintained that the state board of elections' allegedly unlawful conduct negatively impacted work central to their missions, such as promoting voter engagement, "counsel[ing] voters to support Republican candidates," electing Republicans to office, advocating for election security, "staffing voting protection hotlines, [and] investigating reports of voter fraud and disenfranchisement," so, too, did Defendants' REO discrimination negatively impact the FHOs' core mission-central work providing services, counseling, and education, as well as investigation of reports of housing discrimination. *Id.*; *see also Mar. for Our Lives Idaho v. McGrane*, --- F. Supp. 3d ----, No. 1:23-CV-00107-AKB, 2024 WL 4226912, at *6 (D. Idaho Sept. 17, 2024) (distinguishing *Hippocratic Medicine* because the organizational plaintiff had "submitted evidence showing it is in the 'business' of educating and registering voters—not merely gathering information and advocating against the law"). This is not a case where Defendants merely ran afoul of Plaintiffs' ideals; Defendants directly undermined the FHOs' core business activities. Accordingly, the FHOs have sustained a sufficient injury-in-fact to support their organizational standing, as well as their claims for damages.

## CONCLUSION

For the foregoing reasons and those articulated in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Available Remedies, the Court should deny Defendants' Motion for Summary Judgment on Available Remedies.

Dated: November 13, 2024                Respectfully submitted,

                                            */s/ Jessica P. Weber*
                                       Jessica P. Weber (Fed. Bar No. 17893)
Andrew D. Freeman (Fed. Bar No. 03867)
Monica R. Basche (Fed. Bar No. 20476)
Lauren A. DiMartino (Fed. Bar No. 22046)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
jweber@browngold.com
adf@browngold.com
mbasche@browngold.com
ldimartino@browngold.com

Morgan Williams (*pro hac vice*)
National Fair Housing Alliance
1101 Vermont Avenue, NW, Suite 710
Washington, DC 20005
Phone: 202-898-1661
mwilliams@nationalfairhousing.org

*Counsel for Plaintiffs*

# APPENDIX A

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **NATIONAL FAIR HOUSING ALLIANCE** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1**<br><br>Promoting equal housing markets | **Broad Core Activity Type 2**<br><br>Counteracting racial segration | **Broad Core Activity Type 3**<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4**<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Ex. A ("Interrogs. Ex. A") at 1–5, ECF 295-23; Seicshnaydre Rep. at 19–20, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. A at 6, ECF 295-23.<br>Eliminating racial segregation. *Id.*<br>Eradicating discrimination. *Id.*<br>Educating the public about fair housing. *Id.*<br>Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Increasing critical resources, like parks, recreational facilities, bank branches, healthcare facilities, fresh food sites, etc. in under-served communities. *Id.* | ✔ | ✔ | | ✔ |
| Increasing the supply of safe, affordable, quality housing. *Id.* | ✔ | ✔ | | ✔ |
| Increasing homeownership access for communities of color. *Id.* | ✔ | ✔ | | ✔ |
| Increasing the supply of accessible, affordable housing for people with disabilities. *Id.* | ✔ | | | ✔ |
| Advancing policies to expand access to safe, quality, affordable credit. *Id.* | ✔ | ✔ | | ✔ |
| Preventing displacement and housing instability. *Id.* | ✔ | ✔ | | |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* at 14. | ✔ | ✔ | ✔ | ✔ |
| Training of industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members regarding foreclosure, homeownership, neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |

| | | | | |
|---|---|---|---|---|
| NFHA implemented a community development program by providing grants to homeowners and persons living in rental properties to renovate homes to make them accessible to persons with disabilities, and to senior homeowners in Washington, D.C.'s African-American neighborhoods to bring their homes up to code so that their homes would be safe and could qualify for replacement coverage from homeowner's insurance companies. This program was expanded to several states and added grant assistance to veterans with disabilities. Compl. at 11, ECF 1. | ✔ | ✔ | | ✔ |
| NFHA Awarded 90 grants to community based and charity organizations to fulfill its community stabilization mission.  Interrogs. Ex. A at 7–14, ECF 295-23. | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| CONNECTICUT FAIR HOUSING CENTER | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 2, ECF 295-24; Seicshnaydre Rep. at 19–20, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 3, ECF 295-24.<br>Eliminating racial segregation. *Id.*<br>Eradicating discrimination. *Id.*<br>Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Foreclosure prevention, including providing advice at volunteer attorney tables in courthouses, appearing for homeowners in foreclosure at Attorney for a Day programs, representing homeowners in foreclosure, and advocating with Connecticut's legislature for continuation of the State's nationally recognized foreclosure mediation program. *Id.* at 2–3. | ✔ | ✔ | | ✔ |
| Working with other fair housing advocates to establish industry best practices for REO maintenance and marketing. *Id.* at 4. | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership, neighborhood stabilization, etc. *Id.* | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| DENVER METRO FAIR HOUSING CENTER | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. See Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 5–6, ECF 295-24; Seicshnaydre Rep. at 14–15, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 7. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.* , down payment assistance and closing cost assistance). *Id.* | | ✔ | | ✔ |
| Housing rehabilitation. *Id.* | | ✔ | | ✔ |
| Community enhancement (*e.g* ., construction of parks, gardens, recreation areas). *Id.* | ✔ | ✔ | | |
| Community engagement (*e.g.,* summer camps, leadership programs). *Id.* | ✔ | ✔ | | ✔ |
| Education of community members regarding foreclosure, homeownership, and neighborhood stabilization. *Id.* | | ✔ | | ✔ |
| Established the Fair Housing Action Fund to promote neighborhood development and stabilization. The Fund has supported construction of new homes in partnership with Habitat for Humanity and other local nonprofits and it provides grants for critical repair of existing homes, including grants to make homes and apartments accessible. Compl. at 17, ECF 1. | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **FAIR HOUSING ADVOCATES OF NORTHERN CALIFORNIA** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1**<br><br>Promoting equal housing markets | **Broad Core Activity Type 2**<br><br>Counteracting racial segration | **Broad Core Activity Type 3**<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4**<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* See Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 11–13, ECF 295-24; Seicshnaydre Rep. at 14–15, ECF 295-22. | ✓ | ✓ | ✓ | ✓ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 14. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✓ | ✓ | ✓ | ✓ |
| Homeownership promotion (*e.g.* , predatory lending/pre-purchase education). *Id.* | ✓ | ✓ | ✓ | ✓ |
| Foreclosure prevention (*e.g.* , workshops, counsel clients on mortgage modifications or how to bring mortgages current). *Id.* | ✓ | ✓ | | |
| Advocacy and outreach to city and state governments and education of community members re: foreclosure, homeownership, and neighborhood stabilization. *Id.* at 14-15. | ✓ | ✓ | | ✓ |
| Training programs for real estate professionals. Compl. at 19, ECF 1. | ✓ | ✓ | | ✓ |
| Pre-purchase education for homebuyers. *Id.* | ✓ | ✓ | | ✓ |
| Foreclosure prevention and fair housing counseling. *Id.* | ✓ | ✓ | | |
| Grants to homeowners and renters to make their living space accessible and to promote integration. *Id* . | ✓ | ✓ | | |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **FAIR HOUSING CONTINUUM** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1** <br><br> Promoting equal housing markets | **Broad Core Activity Type 2** <br><br> Counteracting racial segration | **Broad Core Activity Type 3** <br><br> Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** <br><br> Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 21–22, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22.. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs Ex. B at 23. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.*, down payment assistance; closing cost assistance). *Id.* at 22. | ✔ | ✔ | | |
| Emergency repairs. *Id.* | ✔ | ✔ | | |
| Foreclosure prevention (*e.g*., anti-displacement grants for renters and/or to bring mortgages current). *Id.* | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Repurposing of blighted or vacant lots. *Id.* | ✔ | ✔ | | |
| Community enhancement (*e.g.*, support for the construction of a new Youth Center). *Id.* at 23. | ✔ | ✔ | | ✔ |
| Community engagement (e.g., a trip to an Orlando business incubator in partnership with the Brevard Neighborhood Development Center). *Id.* | ✔ | ✔ | | ✔ |
| Training industry stakeholders on REO best practices, including training the Florida Real Estate Association, the Florida Affordable Housing Coalition, and the Florida Annual Fair Housing Summit on foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members regarding foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |

| | | | |
|---|---|---|---|
| The Continuum has an Inclusive Communities Program that provides grants for down payments, loan reduction, and home rehabilitation and modification to support homeownership and neighborhood stabilization. If the buyer is a veteran, active duty military, disabled, or willing to be the owner-occupant of a home in a distressed neighborhood, the Continuum will provide a grant to assist with the purchase or building of a home. Compl. at 14, ECF 1. | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **FAIR HOUSING CENTER OF CENTRAL INDIANA** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1**<br><br>Promoting equal housing markets | **Broad Core Activity Type 2**<br><br>Counteracting racial segregation | **Broad Core Activity Type 3**<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4**<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 27–29, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B. at 31. Eliminating racial segregating. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Emergency repairs. *Id.* at 30. | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Repurposing of blighted or vacant lots. *Id.* | ✔ | ✔ | | |
| Accessibility modifications. *Id.* | ✔ | ✔ | | |
| Community enhancement, including an arts project and creation of a pocket park. *Id.* | ✔ | ✔ | | ✔ |
| Community engagement, including a bike camp, farmer's market, and urban teaching garden. *Id.* | ✔ | ✔ | | |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* at 31. | ✔ | ✔ | | ✔ |
| Training industry stakeholders on REO best practices. *Id.* at 31. | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members regarding foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |

| | | | |
|---|---|---|---|
| FHCCI's inclusive communities work includes connecting neighborhood partners to help, serve, revitalize, stimulate, and invest resources to rebuild an affordable, safe, and vital community. In its targeted neighborhoods, FHCCI has funded acquisition and major rehabilitation of single-family homes to be sold to owner-occupants. Compl. at 16, ECF 1. | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **FAIR HOUSING CENTER OF GREATER PALM BEACHES** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1** Promoting equal housing markets | **Broad Core Activity Type 2** Counteracting racial segration | **Broad Core Activity Type 3** Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 34, ECF 295-24; Seicshnaydre Rep. at 15–16, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 35. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion. *Id.* | ✔ | ✔ | | |
| Foreclosure prevention. *Id.* | ✔ | ✔ | | |
| Ensuring equal and affordable housing opportunity for all people by promoting culturally diverse communities through open housing. *Id.* | ✔ | ✔ | | ✔ |
| Educating housing providers on REO best practices. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Educating community members re: foreclosure, homeownership, neighborhood stabilization, etc. *Id.* | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **FAIR HOUSING COUNCIL OF GREATER SAN ANTONIO** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1** <br><br> Promoting equal housing markets | **Broad Core Activity Type 2** <br><br> Counteracting racial segration | **Broad Core Activity Type 3** <br><br> Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** <br><br> Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 38, ECF 295-24; Seicshnaydre Rep. at 15–16, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Eliminating racial segregation. Interrogs. Ex. B at 39. <br> Eradicating housing discrimination. *Id.* <br> Increasing fair and equal access to housing. *Id.* <br> Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Planned testing, tester recruitment, and education and outreach activities aimed at affirmatively further fair housing in Cameron County, Hidalgo County, Nueces County, Starr County, and Willacy County. *Id.* at 39. | ✔ | | ✔ | ✔ |
| Promoting fair housing and fair lending, promoting the creation of diverse, inclusive, and affordable communities. *Id.* | ✔ | ✔ | | ✔ |
| Ensuring equal housing opportunities for all persons in its service area. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Promoting the creation of diverse, inclusive, and affordable communities. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Education and outreach to community members regarding foreclosure, homeownership, neighborhood stabilization, and community development. *Id.* at 40. | ✔ | ✔ | | ✔ |
| Advocacy and outreach to government officials. *Id.* | ✔ | ✔ | | ✔ |
| Identification and comparison of industry best practices to current area practices for REO maintenance and marketing. *Id.* | ✔ | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| FAIR HOUSING CENTER OF NORTHERN ALABAMA | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Seicshnaydre Rep. at 15–16, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 43, ECF 295-24. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Presentations to local governments. *Id.* at 42. | ✔ | ✔ | | ✔ |
| Participation in community advocacy activities. *Id.* | ✔ | ✔ | ✔ | |
| Education on the negative impact of poorly maintained REO properties. *Id.* at 43. | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city governments. *Id.* | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| FAIR HOUSING CENTER OF WESTERN MICHIGAN | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1** Promoting equal housing markets | **Broad Core Activity Type 2** Counteracting racial segregation | **Broad Core Activity Type 3** Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 45, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Preventing and eliminating illegal housing discrimination. Interrogs. Ex. B at 46. Ensuring equal housing opportunity. *Id.* at 47. Increasing support for fair housing. *Id.* Promoting diverse, open communities. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g*., down payment assistance; closing cost assistance). *Id.* at 46. | ✔ | ✔ | | |
| Critical exterior home repairs. *Id.* | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Repurposing of blighted or vacant lots. *Id.* | ✔ | ✔ | | |
| Community enhancement (*e.g.* , construction of green spaces and revitalization of recreation areas). *Id.* | ✔ | ✔ | | ✔ |
| Community engagement (*e.g* ., summer camps, leadership programs, community safety initiatives). *Id.* | ✔ | ✔ | | ✔ |
| Environmental health (*e.g.* weatherization, home health hazard assessments, and intervention). *Id.* | ✔ | ✔ | | |
| Building an understanding of the value of fair housing. *Id.* at 47. | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| LOUISIANA FAIR HOUSING ACTION CENTER (formerly Greater New Orleans Fair Housing Action Center) | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1** <br><br> Promoting equal housing markets | **Broad Core Activity Type 2** <br><br> Counteracting racial segration | **Broad Core Activity Type 3** <br><br> Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** <br><br> Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 62–63, ECF 295-24; Seicshnaydre Rep. at 15–16, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 68. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.* , down payment assistance; closing cost assistance). *Id.* | ✔ | ✔ | | |
| Foreclosure prevention (*e.g.* , anti-displacement grants for renters and/or to bring mortgages current). *Id.* | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members regarding foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| LAFHAC's Inclusive Communities Program has been instrumental in addressing longstanding patterns of segregation and promoting fair housing choice in the metropolitan Baton Rouge area through activities designed to stabilize poor and minority neighborhoods impacted by predatory lending and high foreclosure rates, and to support affordable rental housing and homeownership opportunities in communities of color. Compl. at 18, ECF 1. | ✔ | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **HOPE FAIR HOUSING CENTER** | | | | |
| **Example of Core Activity** **(Programs and Services)** | **Broad Core Activity Type 1** Promoting equal housing markets | **Broad Core Activity Type 2** Counteracting racial segration | **Broad Core Activity Type 3** Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 74, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 75. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.* , down payment assistance and closing cost assistance). *Id.* | ✔ | ✔ | | |
| Foreclosure prevention (*e.g.* , anti-displacement grants for renters and/or to bring mortgages current). *Id.* | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Community enhancement (*e.g.* , construction of parks, gardens, recreation areas). *Id.* | ✔ | ✔ | | |
| Community development efforts in Elgin and Austin (a community within the City of Chicago) to stabilize communities of color harmed by the foreclosure crisis. *Id.* | ✔ | ✔ | | ✔ |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* at 76. | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| Education of community-based organizations invested in community development. *Id.* | ✔ | ✔ | | ✔ |

| | | | |
|---|---|---|---|
| HOPE FHC's inclusive community development initiatives have provided grants to renovate homes, down payment and closing cost assistance, community enhancement initiatives, offered rent assistance to homeless families, created marketing materials to affirmatively market communities of color, and provided homebuying counseling. Compl. at 15, ECF 1. | ✔ | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 79–80, ECF 295-24; Seicshnaydre Rep. at 15–16, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 82. Eliminating racial segregating. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.* , housing counseling, down payment assistance; closing cost assistance). *Id.*  at 81. | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Community enhancement (*e.g.* , construction of gardens, school programs, and leadership training). *Id.* | ✔ | ✔ | | ✔ |
| Conducting fair housing workshops in Miami-Dade and Broward counties and throughout Florida. *Id.* | ✔ | ✔ | | ✔ |
| HOPE, Inc.'s Inclusive Communities Programs include providing grants to local non-profits to conduct homeownership training workshops and down payment assistance and repairs, including making homes accessible for persons with disabilities. Compl. at 12, ECF 1. | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| THE FAIR HOUSING CENTER FOR RIGHTS AND RESEARCH | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1 <br><br> Promoting equal housing markets | Broad Core Activity Type 2 <br><br> Counteracting racial segration | Broad Core Activity Type 3 <br><br> Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4 <br><br> Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 85, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 86. <br> Eliminating racial segregation. *Id.* <br> Eradicating discrimination. *Id.* <br> Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Housing credit to facilitate the production and maintenance of affordable housing. *Id.* | ✔ | ✔ | | ✔ |
| Equitable access to credit for low and moderate income individuals. *Id.* | ✔ | ✔ | | ✔ |
| Credit for community economic development. *Id.* | ✔ | ✔ | | ✔ |
| Participated in community groups and efforts to inform Cuyahoga County's County-wide housing policy to address the following priorities: (1) Access to capital; (2) Tax Collection and Delinquency; (3) Housing Insecurity; (4) Special Populations; (5) Fair Housing; and (6) Confidence in the Housing Market; and to address blight, foreclosures, predatory lending and extractive property investment, and residential demolition. *Id.* | ✔ | ✔ | | ✔ |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* at 87. | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| Provides counseling, guidance, and support for individuals who encounter discrimination in their search for housing. Compl. at 19, ECF 1. | ✔ | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| METRO FAIR HOUSING SERVICES (Atlanta, Georgia) | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 90, ECF 295-24; Seicshnaydre Rep. at 14–15, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 91.<br>Eliminating racial segregation. *Id.*<br>Eradicating discrimination. *Id.*<br>Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Foreclosed property acquisition, rehabilitation and sale in partnership with the Atlanta Neighborhood Development Partnership (ANDP). *Id.* at 90. | ✔ | ✔ | | |
| Repurposing of blighted blocks and vacant lots in partnership with SUMMECH Community Development Corporation. *Id.* | ✔ | ✔ | | |
| Promoting homeownership and neighborhood stabilization via down payment and closing cost assistance in partnership with GA Advancing Communities Together, Inc. (GA ACT). *Id.* at 91. | ✔ | ✔ | | |
| Identifying and comparing industry best practices to current area practices for REO maintenance and marketing. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices;<br>Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members on foreclosure, homeownership, and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| Operating Community Relief Fund (CRF) that supports home ownership, property rehabiliation, neighborhood stabilization, and development in communities of color redevelopment and helps reinvest in communities to counteract the damage from the foreclosure crisis. *Id.* at 91-93. | ✔ | ✔ | | |

| | | | |
|---|---|---|---|
| Metro has launched multiple educational campaigns to address housing discrimination designed to teach both consumers and housing professionals about equality of treatment of neighborhoods, the negative consequences that flow from racial steering, and the benefits of residential diversity. Compl. at 13, ECF 1. | ✔ | ✔ | ✔ | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| METROPOLITAN MILWAUKEE FAIR HOUSING COUNCIL | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 97–98, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 99. Eliminating racial segregation. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion. *Id.* | ✔ | ✔ | | |
| Foreclosure prevention. *Id.* | ✔ | ✔ | | |
| Provision of assistance to community organizations to engage in neighborhood improvement and stabilization in Milwaukee neighborhoods and to promote racially and economically integrated housing patterns. *Id.* | ✔ | ✔ | | ✔ |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city, county, and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| MMFHC's inclusive communities projects include providing grants to neighborhood non-profit partners to expand access to affordable and responsible homeownership while improving neighborhoods that were damaged by the foreclosure crisis. Compl. at 16, ECF 1. | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| MIAMI VALLEY FAIR HOUSING CENTER | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 102, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 104. Eliminating racial segregating. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.* , down payment assistance; closing cost assistance). *Id.*  at 103. | ✔ | ✔ | | |
| Emergency repairs. *Id.* | ✔ | ✔ | | |
| Foreclosure prevention (*e.g.* , anti-displacement grants for renters and/or to bring mortgages current). *Id.* | ✔ | ✔ | | |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Repurposing of blighted or vacant lots. *Id.* | ✔ | ✔ | | |
| Community enhancement (e.g., construction of parks, gardens, recreation areas). *Id.*  at 104. | ✔ | ✔ | | ✔ |
| Community engagement (*e.g* ., summer camps, leadership programs). *Id.* | ✔ | ✔ | | ✔ |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **NORTH TEXAS FAIR HOUSING CENTER** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1** Promoting equal housing markets | **Broad Core Activity Type 2** Counteracting racial segration | **Broad Core Activity Type 3** Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4** Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 108, ECF 295-24; Seicshnaydre Rep. at 15–16, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 109. Eliminating racial segregating. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.*, down payment assistance; closing cost assistance). *Id.* | ✔ | ✔ | | |
| Emergency repairs. *Id.* | ✔ | ✔ | | |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* at 110. | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| SOUTH SUBURBAN HOUSING CENTER (Homewood, IL) | | | | |
| Example of Core Activity (Programs and Services) | Broad Core Activity Type 1<br><br>Promoting equal housing markets | Broad Core Activity Type 2<br><br>Counteracting racial segration | Broad Core Activity Type 3<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | Broad Core Activity Type 4<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 113, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B at 114. Eliminating racial segregating. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership purchase (*e.g.* , down payment assistance; and closing cost assistance). *Id.* | ✔ | ✔ | | |
| Foreclosure prevention, mortgage distress assistance, and real estate tax arrearage assistance. *Id.* | ✔ | ✔ | | |
| Providing affirmative relief to homeowners in distressed communities of color adversely impacted by the mortgage market collapse to stimulate recovery. *Id.* | ✔ | ✔ | | ✔ |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.*  at 115. | ✔ | ✔ | | ✔ |
| Education of community members re: foreclosure, homeownership and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |
| SSHC has launched multiple educational activities to address housing discrimination designed to teach both consumers and housing professionals about equality of treatment of neighborhoods, the negative consequences that flow from racial steering, and the benefits of residential diversity. Compl. at 14–15, ECF 1. | ✔ | ✔ | | ✔ |

| | | | |
|---|---|---|---|
| SSHC provides grants in recovering communities of color to first-time homebuyers to purchase housing, to persons in housing payment distress allowing them to stabilize home ownership, and to persons forced to rent due to displacement caused by foreclosure. *Id.* | ✔ | ✔ | | ✔ |

| Plaintiffs' Exemplar Core Business Activities and Services Impaired by Defendants' Racially Discriminatory REO Maintenance and Marketing | | | | |
|---|---|---|---|---|
| **TOLEDO FAIR HOUSING CENTER** | | | | |
| **Example of Core Activity (Programs and Services)** | **Broad Core Activity Type 1**<br><br>Promoting equal housing markets | **Broad Core Activity Type 2**<br><br>Counteracting racial segration | **Broad Core Activity Type 3**<br><br>Eradicating housing discrimination through counseling, complaint receipt, and enforcement | **Broad Core Activity Type 4**<br><br>Promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers |
| Support, retention, and maintenance of fair housing advocacy business with dedicated staff. *See* Pls.' Resp. to Defs.' First Phase III Interrogs., Am. Ex. B ("Interrogs. Ex. B") at 119–120, ECF 295-24; Seicshnaydre Rep. at 16–19, ECF 295-22. | ✔ | ✔ | ✔ | ✔ |
| Increasing fair and equal access to housing. Interrogs. Ex. B. at 122. Eliminating racial segregating. *Id.* Eradicating discrimination. *Id.* Promoting fair housing and fair lending. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Homeownership promotion (*e.g.*, homeowners' insurance and back taxes programming, down payment assistance; closing cost assistance). *Id.* at 121. | ✔ | ✔ | | |
| Emergency repairs. *Id.* | ✔ | ✔ | | |
| Foreclosure prevention (*e.g.*, anti-displacement grants for renters and/or to bring mortgages current); For example, TFHC's MLK Inclusive Communities foreclosure prevention program funded emergency mortgage assistance in the very same zip codes where TFHC investigated discriminatory REO maintenance and marketing practices. *Id.* | ✔ | ✔ | | ✔ |
| Housing rehabilitation. *Id.* | ✔ | ✔ | | |
| Repurposing of blighted or vacant lots. *Id.* | ✔ | ✔ | | |
| Community enhancement (*e.g.*, construction of parks, gardens, recreation areas). *Id.* at 122. | ✔ | ✔ | | ✔ |
| Establishment of industry best practices for REO maintenance and marketing. *Id.* | ✔ | ✔ | ✔ | ✔ |
| Training industry stakeholders on REO best practices. *Id.* | ✔ | ✔ | | ✔ |
| Advocacy/outreach to city and state governments. *Id.* | ✔ | ✔ | | ✔ |

| | | | |
|---|---|---|---|
| Education of community members re: foreclosure, homeownership and neighborhood stabilization. *Id.* | ✔ | ✔ | | ✔ |