# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>BANK OF AMERICA, N.A., *et al.*,<br><br>    *Defendants*. | Case No.: 1:18-CV-1919 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## FOR LACK OF SUBJECT-MATTER JURISDICTION

## TABLE OF CONTENTS

**Page**

STANDARD OF LAW.................................................................................................... 2

ARGUMENT ................................................................................................................... 3

I.    The Supreme Court unanimously rejected the organizational Plaintiffs'
standing theories. ............................................................................................. 3

II.   The organizational Plaintiffs cannot recover damages without standing and
cannot piggyback off other Plaintiffs' standing..................................................... 11

CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Encore v. Fontes*,
   No. 24-1673, 2024 WL 4333202 (D. Ariz. Sept. 27, 2024) ....................................6

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006)....................................................................................................2

*Ariz. All. for Retired Ams. v. Mayes*,
   117 F.4th 1165 (9th Cir. 2024) ........................................................5, 6, 7, 9

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
   777 F.3d 712 (4th Cir. 2015) .....................................................................................2

*Bostic v. Schaefer*,
   760 F.3d 352 (4th Cir. 2014) .....................................................................................2

*Coal. on Homelessness v. City & Cnty. of S.F.*,
   No. 22-5502, 2024 WL 4982989 (N.D. Cal. Dec. 4, 2024)........................................6

*Doe v. Chao*,
   540 U.S. 614 (2004)..................................................................................................11

*Elrod v. WakeMed*,
   No. 21-2203, 2023 WL 1256601 (4th Cir. Jan. 31, 2023).......................................12

*Evans v. B.F. Perkins Co.*,
   166 F.3d 642 (4th Cir. 1999) .....................................................................................3

*Everhart v. Colonial Pipeline Co.*,
   No. 21-3559, 2022 WL 3699967 (N.D. Ga. July 22, 2022) ...................................11

*Fancy Cats Rescue Team, Inc. v. Crenson*,
   No. 14-1073, 2015 WL 268665 (D. Md. Jan. 21, 2015)..........................................11

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024)........................................................................... *passim*

*Free Speech Coal. v. Kundsen*,
   --- F. Supp. 3d ---, No. 24-0067, 2024 WL 4542260 (D. Mont. Oct. 22, 2024).......................6

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)........................................................................... *passim*

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ................................................................................ 3

*Legal Aid Chi. v. Hunter Props, Inc.*,
  No. 23-4809, 2024 WL 4346615 (N.D. Ill. Sept. 30, 2024) .................................... 6

*Lewis v. Casey*,
  518 U.S. 343 (1996) .............................................................................................. 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................... 11, 13

*March for Our Lives Idaho v. McGrane*,
  --- F. Supp. 3d ---, No. 23-0107, 2024 WL 4226912 (D. Idaho Sept. 17, 2024),
  *appeal docketed*, No. 24-6376 (9th Cir. Oct. 18, 2024) .......................................... 7

*Mayor & City Council of Balt. v. Trump*,
  416 F. Supp. 3d 452 (D. Md. 2019) ........................................................................ 3

*Menders v. Loudoun Cnty. Sch. Bd.*,
  65 F.4th 157 (4th Cir. 2023) .................................................................................. 2

*Penegar v. Liberty Mut. Ins. Co.*,
  115 F.4th 294 (4th Cir. 2024) ................................................................................ 13

*RNC v. Aguilar*,
  No. 24-0518, 2024 WL 4529358 (D. Nev. Oct. 18, 2024) ................................... 6, 7

*RNC v. Benson*,
  --- F. Supp. 3d ---, No. 24-0262, 2024 WL 4539309 (W.D. Mich. Oct. 22,
  2024), *appeal docketed*, No. 24-1985 (6th Cir. Nov. 8, 2024) ............................ 6, 7

*RNC v. North Carolina State Board of Elections*,
  120 F.4th 390 (4th Cir. 2024) ............................................................................ 7, 8

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*,
  547 U.S. 47 (2006) ........................................................................................ 2, 12, 13

*Sarafin v. Hawai'i Public Housing Authority*,
  No. 24-0066, 2024 WL 5246597 (D. Haw. Dec. 30, 2024) ............................ 4, 5, 6

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................ 3

*Strong Communities Found. of Ariz. Inc. v. Richer*,
  No. 24-2030, 2024 WL 4475248 (D. Ariz. Oct. 11, 2024) ................................. 6, 7

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).............................................................................................11, 12, 14

*Wikimedia Found. v. NSA*,
   857 F.3d 193 (4th Cir. 2017) ........................................................................12, 13

*Younie v. City of Hartley*,
   97 F. Supp. 3d 1058 (N.D. Iowa 2015).....................................................................3

**Rules**

Fed. R. Civ. P. 12 .................................................................................... *passim*

Among the motions presently before the Court is Defendants' motion for summary judgment on available remedies. *See* ECF Nos. 288, 295, 303, 322-1. That motion is based on the organizational Plaintiffs' failure to produce evidence to support damages claims based on their asserted "diversion of resources" and "frustration of mission" legal theories. As demonstrated below, the Supreme Court's recent decision in *Food & Drug Administration v. Alliance for Hippocratic Medicine* ("*FDA*"), 602 U.S. 367 (2024), and Plaintiffs' concessions in their sur-reply brief addressing the case, establish that the organizational Plaintiffs lack the concrete injury required by Article III. As this deprives the Court of subject-matter jurisdiction, their claims must be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

On June 13, 2024, the Supreme Court's ruled in *FDA* that impairment of an organizational plaintiffs' "ability to provide services and achieve their organizational missions . . . ***does not work*** to demonstrate standing." 602 U.S. at 394 (emphasis added). Just weeks later, on August 28, 2024, Plaintiffs opposed Defendants' motion by arguing that they were entitled to recover damages because Defendants somehow "impaired the[ir] missions." ECF No. 295 at 2. Plaintiffs neglected at that time to acknowledge, let alone attempt to distinguish, the *FDA* holding.

Thereafter, on November 13, 2024, Plaintiffs sought and obtained leave to file a sur-reply brief to address *FDA* for the first time. But their brief took a surprising turn. Rather than arguing and demonstrating that the organizational Plaintiffs actually meet the *FDA* standard to establish standing, the organizational Plaintiffs *concede* they lack the concrete injury yet contend they are entitled to collect damages from Defendants *anyway*. The remarkable concession appears in a footnote:

> Defendants assume that the limits on which injuries confer standing mirror the limits on the injuries for which the [Plaintiffs] can seek compensation. Yet they cite no authority suggesting that once an organization has standing to bring a lawsuit (based on any of its injuries-in-fact), it is limited to seeking damages only for those injuries that established standing. To the contrary, only one plaintiff in this case need have standing for the entire

lawsuit to proceed and for all Plaintiffs to seek compensation from Defendants. *See Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 53 (2006); *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). If plaintiffs without standing can seek damages from a defendant simply by virtue of being the co-plaintiff of a party with standing, the recovery of damages cannot be limited to only those injuries that confer standing.

ECF No. 322-1 at 2 n.1. Every statement of law in this footnote is demonstrably wrong, and not only unsupported, but contradicted, by the very case law Plaintiffs cite. It is simply *not* true that a plaintiff without Article III standing can obtain damages in federal court, under the circumstances Plaintiffs posit or any other.

Instead, the proper response to any plaintiff's lacking the concrete injury required for Article III standing is to dismiss their claims for lack of subject-matter jurisdiction. *See*, *e.g.*, *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 164 (4th Cir. 2023) (ordering "the district court to dismiss the action" where plaintiffs "fail[ed] to establish an Article III injury"); *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 715–16 (4th Cir. 2015) ("Article III standing" is a "subject matter jurisdiction issue"). Defendants thus respectfully submit that the organizational Plaintiffs' conceded lack of standing—and the evidentiary record confirming the same—obliges this Court to dismiss their claims under FED. R. CIV. P. 12(b)(1).

## STANDARD OF LAW

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citation omitted). Indeed, "Rule 12(h)(3) instructs: 'Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action.'" *Id.* (emphasis added). Because "standing to maintain a suit implicates the court's jurisdiction," the Court is "bound to address the subject matter jurisdiction issue . . . before the merits." *Beyond Sys.*, 777 F.3d at 715–16. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to

declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed 'in one of two ways': either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id*. "However, the distinction between facial attacks and factual attacks does not depend on whether matters outside the pleadings are considered." *Younie v. City of Hartley*, 97 F. Supp. 3d 1058, 1060 (N.D. Iowa 2015). Facial attacks encompass challenges supported "by undisputed facts evidenced in the record." *Id*. Either way, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In this case, subject-matter jurisdiction is facially lacking because the material facts are either affirmatively alleged in the Complaint, or undisputed.

## **ARGUMENT**

### I.    **The Supreme Court unanimously rejected the organizational Plaintiffs' standing theories.**

The organizational Plaintiffs brought this case alleging that Defendants "injure[d]" them by "interfering" with their "efforts . . . to bring about equality of opportunity in housing," causing them to "commit[] scarce resources . . . to counteract Defendants' [alleged] conduct," and "frustrating the Organizational Plaintiffs' missions and purposes." Compl. ¶ 301. These are the same theories that the Supreme Court unanimously rejected in *FDA*. "According to the []

associations," the Supreme Court held, "FDA has 'impaired' their 'ability to provide services and achieve their organizational missions.' That argument does not work to demonstrate standing." 602 U.S. at 394 (citation omitted).

The Supreme Court also addressed the organizations' arguments "that they have demonstrated something more." *Id*. Specifically:

> They claim standing not based on their mere disagreement with FDA's policies, but based on their incurring costs to oppose FDA's actions. They say that FDA has 'caused' the associations to conduct their own studies. . . . They contend that FDA has 'forced' the associations to 'expend considerable time, energy, and resources' . . . as well as engaging in public advocacy and public education.

*Id*. The Court held *that* was not enough to demonstrate Article III standing, either. It held that a plaintiff "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id*. It also rejected the organizational plaintiffs' arguments that "standing exists when an organization diverts its resources in response to a defendant's actions." *Id*. at 395.

The District of Hawaii recently applied *FDA* in dismissing an organizational plaintiff's Fair Housing Act claims. In *Sarafin v. Hawai'i Public Housing Authority*, No. 24-0066, 2024 WL 5246597 (D. Haw. Dec. 30, 2024), individual plaintiff Sinisio Sarafin and organizational plaintiff Legal Aid Society of Hawai'i (LASH) brought Fair Housing Act and other claims challenging the defendant housing authority's handling of disability accommodations. There, as here, the organizational plaintiff "allege[d] Defendants' unlawful actions have required LASH to divert is resources to addressing those actions, resulting in a frustration of LASH's mission," including its claimed mission of "provid[ing] legal assistance to qualified applicants" on "[f]air housing." *Id*. at *4. And there, as here, the organizational plaintiff relied on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in opposing a motion to dismiss challenging its standing.

"Shortly before the hearing on the Motion," however, "the United States Supreme Court

issued its opinion in *Food & Drug Administration v. Alliance for Hippocratic Medicine*." *Sarafin*, 2024 WL 5246597, at *7. Then, "three months after the hearing on the Motion, the Ninth Circuit issued an opinion [in *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165 (9th Cir. 2024)] addressing the effect that [*FDA*] has on Ninth Circuit case law regarding organizational standing." *Id*. at *7. *Mayes* ruled that decades of Ninth Circuit case law finding standing in reliance on *Havens* were "clearly irreconcilable with [*FDA*]" and "thus overruled." 117 F.4th at 1176, 1178.

Based on *FDA* and *Mayes*, the District Court in *Sarafin* found it "clear that the Supreme Court has rejected the interpretation of *Havens Realty*" on which LASH relied. 2024 WL 5246597, at *8. "LASH," it held, "does not allege the same type of injury that the plaintiff in *Havens Realty* alleged, a direct effect upon and interference with its 'core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer.'" *Id*. It continued:

> Providing legal representation to Sarafin in his attempts to secure an accessible housing unit is squarely within one of the aspects of LASH's mission. Plaintiffs acknowledge that LASH is funded, in part, by HUD's Fair Housing Initiative Program and, under that program "LASH receives fair housing complaints, conducts fair housing investigations, and seeks enforcement of fair housing laws by pursuing administrative complaints and lawsuits that result in consent decrees and legal settlements." Thus, the representation that LASH has provided to Sarafin and the general fair housing advocacy that it has engaged in with HPHA are within the scope of the HUD program that LASH operates. . . . **[T]he fact that responding to Defendants' allegedly discriminatory housing practices in general has caused LASH to reduce the time and resources it expends on "other mission-critical activities" does not constitute an actionable injury in fact under [*FDA*] and *Arizona Alliance*** because such harm must be "an actual and concrete harm" that "directly and actually affect[s] the organization's 'core' activities, not merely its 'abstract social interests.'" . . .
>
> The type of standing allegations asserted in Amended Complaint has been rejected in [*FDA*] and *Arizona Alliance*.

*Id*. at *8–9 (emphasis added; citations omitted). The Court therefore dismissed the organizational plaintiff's claims for failure to plead a concrete Article III injury. *Id*. at *9.

*Sarafin* is just the latest in a cascade of cases dismissing organizational plaintiffs' claims for lack of standing based on *FDA*. *See*, *e.g.*:

- *Mayes*, 117 F.4th at 1178 (holding that organizational plaintiffs "cannot show injury-in-fact" and "plaintiffs' purported harm—*e.g.*, they will have to 'expend . . . resources,'" "create[e] a training program," "'divert additional time and resources'—represent the same diversion-of-resources and frustration-of-mission injury that [*FDA*] rejected");

- *Coal. on Homelessness v. City & Cnty. of S.F.*, No. 22-5502, 2024 WL 4982989, at *11 (N.D. Cal. Dec. 4, 2024) (organizational plaintiff's "proffered injury amounts to a frustration-of-mission and diversion-of-resources theory that is no longer viable");

- *RNC v. Benson*, --- F. Supp. 3d ---, No. 24-0262, 2024 WL 4539309, at *12 (W.D. Mich. Oct. 22, 2024), *appeal docketed*, No. 24-1985 (6th Cir. Nov. 8, 2024) ("the Court lacks subject-matter jurisdiction, and dismissal under Rule 12(b)(1) is warranted," because allegations that plaintiffs "expended substantial time and resources investigating Defendants" that they would have "expended . . . on other activities or would not have expended [] at all" did not plead a concrete injury under *FDA*);

- *Free Speech Coal. v. Kundsen*, --- F. Supp. 3d ---, No. 24-0067, 2024 WL 4542260, at *9 (D. Mont. Oct. 22, 2024) ("shift[ing] some resources from one set of pre-existing activities in support of its overall mission to another . . . is simply not enough to confer organizational standing") (cleaned up);

- *RNC v. Aguilar*, No. 24-0518, 2024 WL 4529358, at *7 (D. Nev. Oct. 18, 2024) (claims that plaintiffs "diverted substantial time and resources to mitigate [] injuries caused by defendants' [statutory] violations" that they "would have expended . . . on other activities critical to their mission . . . do not meet the injury-in-fact requirement");

- *Strong Communities Found. of Ariz. Inc. v. Richer*, No. 24-2030, 2024 WL 4475248, at *9–10 (D. Ariz. Oct. 11, 2024) (holding list of "six pre-existing activities in service of [the plaintiff's] mission it claims are affected by defendants' actions" "insufficient to confer organizational standing" because defendants did not "directly affect" or "interfere with" them; plaintiffs merely made a "decision to shift some resources from one set of pre-existing activities in support of their overall mission to another, new set of such activities") (cleaned up);

- *Am. Encore v. Fontes*, No. 24-1673, 2024 WL 4333202, at *9 (D. Ariz. Sept. 27, 2024) (no standing where organizational plaintiff "has not alleged the [challenged] Provision caused it to expend resources to address a pre-existing activity. . . . The fact that a plaintiff will have to expend resources, create a training program, or divert additional time and resources represent the same diversion-of-resources and frustration-of-mission injury that [*FDA*] rejected.") (cleaned up);

- *Legal Aid Chi. v. Hunter Props, Inc.*, No. 23-4809, 2024 WL 4346615, at *11 (N.D. Ill. Sept. 30, 2024) (organizational plaintiff's claim to have diverted resources to "the very work" it "calls its broader mission" insufficient to confer standing).

Plaintiffs insist there are some cases going the other way, citing *RNC v. North Carolina*

*State Board of Elections*, 120 F.4th 390 (4th Cir. 2024), and *March for Our Lives Idaho v. McGrane*, --- F. Supp. 3d ---, No. 23-0107, 2024 WL 4226912 (D. Idaho Sept. 17, 2024), *appeal docketed*, No. 24-6376 (9th Cir. Oct. 18, 2024). *See* ECF No. 322-1 at 3, 7. The latter can be dispensed with immediately. *March for Our Lives* was decided three days before *Mayes*, and it rested on the premise that "Ninth Circuit precedent interpreting *Havens Realty* before [*FDA*] remains binding on this Court." 2024 WL 4226912, at *6. Three days later, the Ninth Circuit declared that "these precedents are [] irreconcilable with [*FDA*]—and thus overruled." *Mayes*, 117 F.4th at 1178. As a case relying on overruled precedent, *March for Our Lives* has no precedential or persuasive value.

Nor does the *RNC* case make the Fourth Circuit an outlier jurisdiction in which the organizational standing requirements are somehow more permissive than the Supreme Court allowed. As an initial matter, its unusual procedural posture, noted Chief Judge Diaz in concurrence, made it "an odd vehicle to robustly analyze Article III standing." 120 F.4th at 408 n.1. The Court was "reviewing an appeal of a remand order after the case was removed from state court," a posture which "left the defendants arguing for the plaintiffs' Article III standing, and the plaintiffs sheepishly suggesting that they hadn't pleaded enough to stay in federal court." *Id*. "To state the obvious then, the plaintiffs don't want to be here," the Chief Judge pointed out. *Id*. at 409. In other election-related cases where the plaintiffs actually *had* tried plead organizational standing on the theory that "they had to divert resources because of some alleged failure by the defendant," the courts "embraced . . . an appropriately stricter view of organizational standing" and dismissed their cases. *Id*. at 410 (citing *Benson*, *supra*; *Aguilar*, *supra*; *Richer*, *supra*).

The panel nonetheless decided the RNC had an Article III injury based on its claims that the state's alleged registration of possibly ineligible voters "significantly stymied" their "voter outreach efforts," because it was "unable to ascertain which of the 225,000 people whom they

allege registered improperly will be able to vote in the election." *Id*. at 397. The Fourth Circuit considered this "core mission" of "counsel[ing] voters to support Republican candidates" comparable to the core activity in *Havens* of "counseling . . . home buyers." *Id*. The idea was that the *RNC*'s "core mission" of "promoting Republican voter engagement" was impaired because it wasted some of its voter-engagement expenses on people not actually eligible to vote, the same way the *Havens* plaintiff's "core mission" of "providing housing counseling services" was allegedly impaired by wasting some of its efforts counseling home-seekers to apply for apartments from which the defendant steered them away. *Id*. at 395, 396–97.[1]

The fatal problem for the organizational Plaintiffs here is that they neither allege nor evidence anything comparable to *either* of these things. First, they attempt to do so with sweeping conclusory statements that do not even carry Plaintiffs' burden on their own terms:

> Defendants' racially discriminatory maintenance and marketing of their REOs interfered with four broad categories of the FHOs' mission-central work: (1) promoting equal housing markets (including promoting housing choice and increasing neighborhoods of opportunity); (2) counteracting racial segregation in housing; (3) eradicating housing discrimination through counseling, complaint receipt, and enforcement; and (4) promoting fair housing and fair lending through educating and collaborating with housing industry members, government officials, and consumers.

ECF No. 322-1 at 6. As Plaintiffs' own phrasing makes clear, all of these assert "simply a setback to the organization[s'] abstract social interests," which does not give them standing. *FDA*, 602 U.S. at 394 (quoting *Havens*, 455 U.S. at 379).

Missing from Plaintiffs' argument is any statement of the requisite "perceptibl[e]

---

[1] As *Havens* was decided at the pleading stage, its finding of standing was based on what the plaintiff "broadly alleged." 455 U.S. at 379. Whether discovery would have validated the allegation that its housing-referral business had been impaired in the manner alleged is uncertain. *See id*. at 379 n.21 (noting that the plaintiff had not yet shown it "indeed suffered impairment"). To sustain this theory after discovery, the plaintiff would have needed evidence that it had actually tried referring home-seekers to the defendant's building and been stymied in some fashion— something absent from their "broad" allegations.

impair[ment]." *Id*. at 395 (quoting *Havens*, 455 U.S. at 379). It is not enough to itemize activities (much less abstract goals like "promoting fair housing" or "increasing neighborhoods of opportunity") and declare them impaired. Plaintiffs must show how Defendants impaired specific "core business activities" in a way that makes Plaintiffs comparable "to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id*. Plaintiffs do not allege, much less evidence, anything like this. Consider, for example, the reference to "neighborhoods of opportunity." That phrase appears in the report of Plaintiffs' putative damages expert in the context of an assertion that "[t]he REO investigation caused LAFHAC to delay an audit regarding race discrimination in greater New Orleans neighborhoods of opportunity." ECF No. 314-4 at 34. In other words, the only way Defendants are alleged to have interfered with the specified activity is that it is one of the "other spending priorities" Plaintiffs could have funded with money they instead chose to direct to their REO investigation. *FDA*, 602 U.S. at 394. That is exactly what does *not* pass muster for standing under *FDA*. *See also Mayes*, 117 F.4th at 1180 ("So *Havens Realty* was not a case in which HOME claimed standing based on its voluntary decision to spend more resources to educate its clients in response to Havens Realty's actions; rather, its core and ongoing business activity was 'perceptibly impaired' by Havens Realty's wrongful lies.").

Plaintiffs then invite the Court to consider a 27-page appendix to their sur-reply brief purporting to list "Exemplar Core Business Activities and Services Impaired by Defendants." *See* ECF No. 322-1 App'x A, *passim*. The Court should absolutely accept the invitation, because it confirms the fatal jurisdictional defect. Again and again, the Appendix lists:

- "[A]bstract social interests" that do not suffice for standing (*Havens*, 455 U.S. at 379), like "[e]liminating racial segregation" and "[e]radicating discrimination."

- "[P]ublic advocacy and public education" efforts that also do not suffice for standing (*FDA*, 602 U.S. at 394), like "[a]dvancing policies to expand access to safe, quality, affordable credit," "[a]dvocacy/outreach to city and state governments," and "[e]ducation of community members regarding foreclosure."

- Complete non-sequiturs, like "NFHA Awarded [*sic*] 90 grants to community based and charity organizations to fulfill its community stabilization mission."

ECF No. 322-1 App'x A at 1–2 & *passim*. At no point do Plaintiffs even attempt to connect the dots between anything Defendants did and any kind of interference with any of these activities, other than relying on the now-rejected theory that "standing exists when an organization diverts its resources" from one priority to another. *FDA*, 602 U.S. at 395.

Providing even further confirmation of this, the claims in the Appendix are sourced exclusively to Plaintiffs' responses to Defendants' interrogatories asking them to articulate their claimed injuries. And the referenced interrogatory responses confirm that the only "impairment" Plaintiffs are claiming is the sort the Supreme Court in *FDA* rejected as a basis for standing. There, Plaintiffs stated:

> Plaintiffs state that they seek to recover damages for . . . **Diversion of resources:** Diversion of resources relates to the time and resources spent identifying and counteracting Defendants' discriminatory conduct—in other words, "the drain on the organization's resources" resulting from having "to identify and counteract the defendant's [sic] racially discriminatory . . . practices." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).
>
> [] Plaintiffs expended significant time investigating the Defendants' REO maintenance and marketing practices and educating the public regarding the discriminatory conduct uncovered. As a result of this expenditure of time and resources, Plaintiffs were forced to divert limited resources and time away from other intended projects and programs. . . .

ECF No. 288-11 at 4–5. In other words, at most, Plaintiffs are just giving the Court a list of their spending priorities. They are not claiming that any of them was impaired in any way other than shifting money from one priority to another. "But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way." *FDA*, 602 U.S. at 394.

Having confirmed to the Court that this is exactly what the organizational Plaintiffs are doing here, their claims should be dismissed under FED. R. CIV. P. 12(b)(1).

## II.    The organizational Plaintiffs cannot recover damages without standing and cannot piggyback off other Plaintiffs' standing.

After the *FDA* ruling came out, Defendants cited it in further support of their motion for summary judgment on available damages. *See* ECF No. 303 at 2–7. The idea is simple: if Plaintiffs do not even have an injury satisfying the "irreducible minimum" required for Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992), then it necessarily follows that they do not have any monetary damages to recover, either.

Plaintiffs' response, in their sur-reply, was to argue that "Defendants assume that the limits on which injuries confer standing mirror the limits on the injuries for which the [Plaintiffs] can seek compensation." ECF No. 322-1 at 2 n.1. Defendants assume no such thing. The parameters for Article III injuries and potentially recoverable damages do not "mirror" each other because Article III standing is the "lower bar," requiring "nothing more than a *de minimis* injury." *Everhart v. Colonial Pipeline Co.*, No. 21-3559, 2022 WL 3699967, at *2 n.5 (N.D. Ga. July 22, 2022); *Fancy Cats Rescue Team, Inc. v. Crenson*, No. 14-1073, 2015 WL 268665, at *3 (D. Md. Jan. 21, 2015). So a plaintiff can have standing despite lacking recoverable damages, *e.g.*, *Doe v. Chao*, 540 U.S. 614, 624–25 (2004), but (contrary to Plaintiffs' sur-reply footnote) a plaintiff that *lacks* even the *de minimis* injury required for standing *ipso facto* also lacks recoverable damages.

That is the ground on which *FDA* is pertinent to Defendants' pending motion for summary judgment on available remedies. But for purposes of the *present* motion, all that matters is the organizational Plaintiffs' concession that they lack standing. Plaintiffs argue that this concession is not fatal to them because "only one plaintiff in this case need have standing for the entire lawsuit to proceed and for all Plaintiffs to seek compensation from Defendants." ECF No. 322-1 at 2 n.1. That is wrong. In fact, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 427 (2021). It is therefore categorically untrue that a plaintiff may "seek compensation" despite a lack of Article III standing. The law is clear that "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "Thus, the Constitution requires that *each Plaintiff* be able to plausibly allege the . . . injury in fact." *Wikimedia Found. v. NSA*, 857 F.3d 193, 216 (4th Cir. 2017) (emphasis added).

Plaintiffs argue that *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47 (2006), holds otherwise, and establishes that "plaintiffs without standing can seek damages from a defendant simply by being the co-plaintiff of a party with standing." ECF No. 322-1 at 2 n.1. *Rumsfeld* holds no such thing, as the Fourth Circuit unequivocally held in *Elrod v. WakeMed*, No. 21-2203, 2023 WL 1256601, at *3 (4th Cir. Jan. 31, 2023). *Elrod* explains that, where plaintiffs seek *identical* relief, the presence of one party with standing suffices, but "where plaintiffs seek to recover individual relief such as individual damages—as is the case here—*each plaintiff must establish standing*." *Id.* (emphases added); *see also*, *e.g.*, *TransUnion*, 594 U.S. at 431 ("Every class member must have Article III standing in order to recover individual damages."). The most important fact about *Rumsfeld* is that it is *not* a case where any plaintiff without a cognizable Article III injury attempted to "seek damages," as Plaintiffs inaccurately assert. ECF No. 322-1 at 2 n.1. *No* damages were at issue in *Rumsfeld*. The only form of relief before the Court—uniformly sought by all plaintiffs— was a preliminary injunction. Thus, the organizational Plaintiffs *cannot* assert standing "simply by … being the co-plaintiff of a party with standing." *Id.*

Plaintiffs' apparent confusion about *Rumsfeld* arises from the case's statement in a footnote that it did not need to address the standing of "other plaintiffs" after finding at least one with standing to seek an injunction, because "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." 547 U.S. at 52 n.2. But this statement rested on the fact that all the plaintiffs were seeking the same injunction, not any kind of "individualized

relief" like monetary damages. *Wikimedia*, *supra*. Here, by contrast, each organizational Plaintiff invokes the jurisdiction of the Court to "seek compensation" from Defendants (ECF No. 322-1 at 2 n.1), which is why each Plaintiff needs an injury-in-fact capable of being "redressed" to be a party to the case.[2] *Lujan*, 504 U.S. at 561. "No matter what right or cause of action a statute may grant a plaintiff, [it] must still have an injury in fact to sue in federal court." *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 300 (4th Cir. 2024).

The organizational Plaintiffs do not specify *who* is the "party with standing" they rely on for their own standing "simply by virtue of being [] co-plaintiff[s]." ECF No. 322-1 at 2 n.1. But since none of the organizational Plaintiffs are situated any differently from any of the other ones so far as the rule of *FDA* is concerned, they are presumably referring to the individual Plaintiffs, who base their claims on alleged injuries to their own property as opposed to the oblique interest in a "mission" on which the organizational Plaintiffs (impermissibly) rely. *See* Compl. ¶ 253 *et seq*. As just demonstrated, however, relying on other Plaintiffs (individual or otherwise) gets the organizational Plaintiffs nowhere.

Perhaps recognizing this, Plaintiffs try to cover their bases by insinuating that, even if *FDA* foreclosed standing based on their diversion-of-resources and frustration-of-mission theories, they still have standing "based on any of [their] injuries-in-fact" and that they are not "limited to seeking damages only for those injuries that established standing." ECF No. 322-1 at 2 n.1. Revealingly, Plaintiffs do not specify what *other* injuries-in-fact they are claiming beyond the ones foreclosed by *FDA*. There are none. Neither the Complaint nor the record evidence, including the

---

[2] As set forth in Defendants' Motion to Exclude Purported Expert Opinions of Elizabeth Korver-Glenn, Albert Poche, Joanne Poole, and Stacy Seicshnaydre (ECF No. 314-1 at 5–8), Plaintiffs rely upon one of their own former executives and current law professor Stacy Seicshnaydre to opine that the Court should award "each FHO" Plaintiff a sum of damages. ECF No. 314-4 at 21, 26, 28. So it is beyond dispute here that each of the organizational Plaintiffs seeks specific and individualized (but ultimately non-compensable) damages.

Seicsshnaydre report that is the basis for their damages claims, allege any type of harm beyond the sort specifically addressed, and rejected, by *FDA*. That suffices to warrant the organizational Plaintiffs' dismissal from the case for lack of Article III standing.

Their argument that Defendants "cite no authority suggesting that [] an organization . . . is limited to seeking damages only for those injuries that established standing" (*id*.) does not spare them. As shown, the organizational Plaintiffs *have* no "injuries that established standing." And it is *Plaintiffs* who cite no authority for the false proposition that there are injuries for which they can "seek compensation" that fail to clear the lower, *de minimis* bar required for Article III standing. There is no such creature in the law.

Plaintiffs double down on this unsupported argument in their motion to strike Defendants' notice of supplemental authorities, where they argue: "Defendants contend Plaintiffs conceded that they lack standing in footnote one of their surreply. Plaintiffs did no such thing. Plaintiffs' footnote merely explained how recovery of damages is not limited only to injuries that confer standing." ECF No. 337 at 4 n.1. If this is what Plaintiffs aimed to do, they failed, since they cite no cases recognizing *any* kind of "injuries" that can be "recover[ed]" as damages despite being insufficient to "confer standing"—because there are none. Tellingly, Plaintiffs leave two components of their argument conspicuously unstated:

(i) Exactly *what* "injuries" they are claiming that fall short of conferring standing, but somehow remain "recover[able]";

(ii) Exactly what "injuries" they have left that *do* confer standing, if indeed they are not "conced[ing] that they lack standing."

As to the first, there are of course no such injuries, nor could there be as a matter of law. If Plaintiffs *had* a compensable injury, they would not refrain from claiming it as a basis for standing. But "[n]o concrete harm, no standing"—and, therefore, no "compensation." *TransUnion*, 594 U.S. at 417. Without a concrete injury, Plaintiffs cannot "get in the federal courthouse door," much less

"recover" anything. *FDA*, 602 U.S. at 379.

As to the second, Plaintiffs' own statement of their alleged "injuries" does *not* amount to anything that confers standing as a matter of law. In their effort to evade *FDA* and identify "core business activities" Defendants somehow impaired, Plaintiffs assert that they "have already explained and provided evidence of how Defendants' discriminatory practices 'exacerbated economic inequality, racial segregation, crime, and neighborhood destabilization. . . .'" ECF No. 322-1 at 5 (brackets omitted). These are not standing-conferring injuries as a matter of law, even if Plaintiffs could evidence them (which they have not). They are precisely the "abstract social interests" not cognizable under *FDA* or *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). No "core business activity" of the Plaintiffs is even mentioned, just the abstract social interest.[3]

Thus, even with the benefit of *FDA* and multiple filings where they availed themselves of opportunities to address it, Plaintiffs still do not identify a single injury that gives them standing. This closes "the federal courthouse door." *FDA*, *supra*. Dismissal of their case for lack of subject-matter jurisdiction is the appropriate relief.

## CONCLUSION

For the above-stated reasons, the Court should dismiss the organizational Plaintiffs from this case pursuant to FED. R. CIV. P. 12(b)(1).

[*signatures on following page*]

---

[3] Tellingly, none of the $72,842,957 Plaintiffs claim as frustration of mission damages has any connection to these abstract social interests Plaintiffs claim as harm or injury. ECF 289 at 16–19. $32,903,235 represents the amount Bank of America spent maintaining the subject properties, and $16,449,617 is an arbitrary multiplier of 1.5 to that amount. *Id*. at 17. The remaining $23,490,105 consists of various other multipliers conjured up by Plaintiffs' purported expert that have no basis in fact or law. *Id*. at 18–19. These claimed damages are simply untethered to any concrete injury that could give rise to standing.

Dated: January 15, 2025

Respectfully submitted,

/s/ *Ava E. Lias-Booker*
Ava E. Lias-Booker (No. 05022)
Melissa Martinez (No. 28975)
MCGUIRE WOODS LLP
500 E. Pratt St., Ste. 1000
Baltimore, Md. 21202
Tel.: (410) 659-4430
Fax: (410) 659-4558
alias-booker@mcguirewoods.com
mmartinez@mcguirewoods.com

/s/ *Thomas M. Hefferon*
Thomas M. Hefferon (No. 15109)
Brooks R. Brown (*pro hac vice*)
Keith Levenberg (No. 11957)
GOODWIN PROCTER LLP
1900 N St. N.W.
Washington, D.C. 20036
Tel.: (202) 346-4248
Fax: (202) 346-4444
thefferon@goodwinlaw.com
bbrown@goodwinlaw.com
klevenberg@goodwinlaw.com

*Counsel for Defendant Bank of America, N.A.*

/s/ *Maryan Alexander*
Maryan Alexander (No. 29158)
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
500 E. Pratt St., Ste. 600
Baltimore, Md. 21202-3173
Tel.: (410) 962-7385
Fax: (410) 962-8758
Maryan.alexander@wilsonelser.com

/s/ *Celena R. Mayo*
Celena R. Mayo (*pro hac vice*)
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
150 E. 42nd St.
New York, N.Y. 10017
Tel.: (212) 490-3000
Fax: (212) 490-3038
celena.mayo@wilsonelser.com

*Counsel for Defendant Safeguard Properties Management, LLC*