**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Northern Division)

NATIONAL FAIR HOUSING ALLIANCE, *et al.*,

Plaintiffs,

v.

BANK OF AMERICA, N.A., *et al.*,

Defendants.

Civil Action No. SAG-18-1919

**PLAINTIFFS' MOTION FOR RECONSIDERATION
OF THE COURT'S MAY 21, 2025 ORDER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

FACTS ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. It was clear error to conclude that Defendants raised a factual challenge to the FHOs' standing in their Motion for Summary Judgment on Available Remedies. ........ 3

II. It would be clear error and manifest injustice for the Court to convert Defendants' facial challenge into a factual challenge without affording the FHOs full and fair notice and opportunity to submit evidence in support of their organizational standing. ........ 7

A. Failing to give the FHOs a full and fair opportunity to be heard on Defendants' factual challenge to their standing constitutes clear error that, if uncorrected, will lead to manifest injustice. ........ 8

B. If given the proper notice and opportunity to be heard, the FHOs would supplement the record with additional evidence of their standing. ........ 10

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

## Cases

*Adams v. Bain*,
697 F.2d 1213 (4th Cir. 1982) ........ 8

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ........ 2, 3

*Am. Libr. Ass'n v. FCC*,
401 F.3d 489 (D.C. Cir. 2005) ........ 8

*Berrios v. Dep't of Army*,
884 F.2d 28 (1st Cir. 1989) ........ 8

*Carlson v. Bos. Sci. Corp.*,
856 F.3d 320 (4th Cir. 2017) ........ 3

*Fair Hous. Ctr. of Metro. Detroit v. Am. House Grosse Pointe, LLC*,
No. 23-2051, 2025 WL 66747 (6th Cir. Jan. 10, 2025) ........ 10

*Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*,
124 F.4th 990 (6th Cir. 2025) ........ 9, 10

*Fayetteville Invs. v. Com. Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ........ 2

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ........ *passim*

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........ 5, 6, 11

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
626 F. Supp. 3d 814 (D. Md. 2022) ........ 3–4, 8

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) ........ 8

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ........ 3

*Lindke v. Freed*,
114 F.4th 812 (6th Cir. 2024) ........ 9

*Loc. 336, Am. Fed'n of Musicians, AFL-CIO v. Bonatz*,
475 F.2d 433 (3d Cir. 1973) ........ 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ... 3

*March for Our Lives Idaho v. McGrane*,
749 F. Supp. 3d 1128 (D. Idaho 2024) ... 14

*Mgmt. Ass'n for Priv. Photogrammetric Surveyors v. United States*,
467 F. Supp. 2d 596 (E.D. Va. 2006) ... 3

*Nadendla v. WakeMed*,
24 F.4th 299 (4th Cir. 2022) ... 3

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*,
899 F.3d 236 (4th Cir. 2018) ... 3

**Rules**

Fed. R. Civ. Proc. 54 ... 2

**Other Authorities**

5B Charles Alan Wright, Arthur R. Miller, and A. Benjamin Spencer, *Federal Practice and Procedure*
§ 1350 (3d ed. 2022) ... 8

After this Court held that the fair housing organization Plaintiffs (the "FHOs") had standing to pursue their claims in this case, the parties engaged in multiple rounds of discovery and moved on to other issues, including Plaintiffs' prima facie case, steps 2 and 3 of the disparate impact burden-shifting framework, and the availability of the various remedies Plaintiffs seek. Although briefing on Defendants' summary judgment motion on available remedies mentioned standing, it did so only in reference to the categories of damages Plaintiffs sought. Defendants never asked the Court to dismiss the FHOs' claims for lack of standing. Months later, after the parties completed their briefing on available remedies, Defendants filed a renewed motion to dismiss claiming lack of subject matter jurisdiction, which they explicitly framed in their motion as a facial, rather than factual, challenge to standing. The FHOs, therefore, responded accordingly to the pending motions, including a request to amend the Complaint, if necessary, to plead additional facts. Thus, prior to the May 15, 2025 hearing, Plaintiffs were never on notice of a factual challenge to their standing and had not had a full and fair opportunity to offer all evidence in support of their standing. When Defendants launched into an evidentiary presentation to challenge the FHOs' standing at the May 15 hearing, Plaintiffs objected given the lack of notice and opportunity to respond in kind. To the extent the Court now intends to convert Defendants' facial challenge into a factual one, it would be both clear error and manifestly unjust to deny Plaintiffs the opportunity to provide an evidentiary response with full and fair notice of the nature of the challenge. Accordingly, if the Court plans to go beyond the Complaint to evaluate the FHOs' standing, the Court should reconsider its May 21, 2025 Order denying the FHOs the chance to offer additional evidence in support of their standing.

## **<u>FACTS</u>**

At the conclusion of the hearing on Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (ECF 343) on May 15, 2025, the Court requested supplemental briefing on Defendants' Motion and entered a subsequent Order directing the Parties to submit a schedule for

the briefing, ECF 370. Because the Parties could not agree on a proposed briefing schedule, they submitted a Joint Status Report with their respective positions on May 19. ECF 372. Plaintiffs took the position that they should be permitted to gather and submit affidavits in support of the twenty FHOs' standing because the prior briefing in this case had not afforded them the opportunity to do so: Defendants had brought a facial challenge to the FHOs' standing and Defendants' previous summary judgment motion had been focused on damages, not an attack on organizational standing. Joint Status Rep. at 1–2 (May 19, 2025), ECF 372.

On May 21, the Court issued an Order concluding that Defendants had brought a factual challenge to the FHOs' standing in their Motion for Summary Judgment on Available Remedies (ECF 289), Order at 1 (May 21, 2025), ECF 373, and that the FHOs had sufficient opportunities to respond to this factual challenge in their Opposition to Defendants' Motion for Summary Judgment, their Surreply to that Motion, and their Opposition to Defendants' Motion to Dismiss, *id.* at 3. Based on this reasoning, the Court rescinded its request for supplemental briefing on Defendants' Motion to Dismiss. *Id.* at 3–4.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) governs motions to reconsider interlocutory orders. Fed. R. Civ. Proc. 54(b) (providing for the reconsideration of orders that "adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties do[] not end the action as to any of the claims or parties"). "An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Instead, Rule 54(b) provides "broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come

to light." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis in original). This is because "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *Am. Canoe*, 326 F.3d at 515–16). The court may grant a motion for reconsideration under three circumstances, one of which applies here: when a "clear error causing manifest injustice" has occurred.[1] *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (quoting *Carlson*, 856 F.3d at 325).

## ARGUMENT

### I. It was clear error to conclude that Defendants raised a factual challenge to the FHOs' standing in their Motion for Summary Judgment on Available Remedies.

Contrary to the Court's reasoning in its May 21 Order, Defendants had not previously raised a factual challenge to the FHOs' standing and the FHOs, therefore, have not had a full and fair opportunity to offer evidence in support of their organizational standing. It was clear error for the Court to conclude otherwise.

Standing is appropriately challenged via a motion pursuant to Rule 12(b)(1). *Mgmt. Ass'n for Priv. Photogrammetric Surveyors v. United States*, 467 F. Supp. 2d 596, 600 (E.D. Va. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). As Defendants did in their Motion to Dismiss, parties typically state whether they are bringing a facial or a factual challenge to subject matter jurisdiction. *See, e.g.*, *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (distinguishing between the analyses the court should conduct depending on whether the defendant raises a facial or factual challenge to subject matter jurisdiction); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 3d 814, 830 (D. Md. 2022) (noting that the defendant "styles this [12(b)(1)] motion as a 'factual

---

[1] The other two circumstances are: (1) "'substantially different evidence' discovered during trial that justifies a different outcome"; and (2) "a change in applicable law." *U.S. Tobacco Coop. Inc*, 899 F.3d at 257 (quoting *Carlson*, 856 F.3d at 325).

challenge.'"). Here, after reciting the different analyses courts undertake in response to facial versus factual challenges to standing, Defendants explicitly framed their Motion as a *facial* challenge to standing. Defs.' Mot. at 3 ("In this case, subject-matter jurisdiction is *facially* lacking because the material facts are either affirmatively alleged in the Complaint, or undisputed.") (emphasis added). Because Defendants characterized their Motion as a facial challenge, the FHOs had no reason to construe Defendants' Motion as a factual challenge to their standing. Indeed, Plaintiffs expressly stated in the Standard of Review section of their Opposition that "Defendants assert a *facial* challenge to this Court's subject-matter jurisdiction over Plaintiffs." Pls. Opp'n at 2 (citing Defs.' Mem. at 3). The FHOs then relied upon their allegations in the Complaint to support their organizational standing.[2] *See* Pls.' Opp'n at 12, 14–25. They also requested leave to amend the Complaint to add more information about the FHOs' core business activities or to supplement the record with evidence of those activities if the Court believed that more information on these activities were needed. Pls.' Opp'n 15 n.5. These are not the statements of a party that believes it is rebutting a factual challenge to standing.

Nor did Defendants' Motion for Summary Judgment on Available Remedies expressly, or implicitly, put Plaintiffs on notice that Defendants were bringing a factual challenge to the FHOs' standing. First, the title of the summary judgment motion expressly states that it is about "available remedies"; nowhere in the title does it mention Rule 12(b)(1) or standing. *See* Defs.' Mot. for Summ. J. & Mem. in Supp. Mot. for Summ. J., ECF 288 & 289-1. Second, in the Motion itself, Defendants moved for "summary judgment . . . , in whole or in part, on the organizational Plaintiffs' claims for

---

[2] Although Plaintiffs offered a few citations to evidence already included in prior filings in footnotes to their Opposition to the Motion to Dismiss, these citations did not represent the full scope of evidence the FHOs would have offered in response to a factual challenge to their standing, which would have included the submission of additional evidence not already filed on the docket, as outlined herein. Because Plaintiffs were opposing a motion to dismiss asserting a *facial* challenge, however, Plaintiffs deemed it improper to attach additional evidence to their opposition and did not do so.

various remedies, including monetary damages and injunctive relief, and on grounds of lack of personal jurisdiction over the claims of the organizational Plaintiffs other than the first-named Plaintiff." Defs.' Mot. for Summ. J. on Available Remedies at 1, ECF 288. The last sentence of the Motion requests only that "summary judgment be entered in [Defendants'] favor, in whole or in part, on Plaintiffs' damages claims." *Id.* Defendants' Proposed Order granting their Motion includes only that summary judgment be entered for Defendants "on Plaintiffs' claims for various remedies, including monetary damages and injunctive relief." Proposed Order, ECF 288-79. Entirely absent from Defendants' Motion and Proposed Order is any request to dismiss the FHOs' claims for lack of standing or subject-matter jurisdiction more broadly.

The Parties' mentions of standing and citations of standing cases did not transform Defendants' summary judgment motion seeking to limit Plaintiffs' remedies into a factual challenge to the FHOs' standing. The Parties cited *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and Fourth Circuit precedent on standing only to define the scope of the injuries for which Plaintiffs sought monetary remedies. While Defendants cited *Havens* and its progeny to argue about Plaintiffs' entitlement to specific types of damages, nowhere did they assert that the FHOs lacked organizational standing altogether, nor did they argue that their claims should be dismissed in their entirety for lack of subject matter jurisdiction. *See generally* Mem. in Supp. Mot. for Summ. J, ECF 289-1. Indeed, with one exception, all of the substantive mentions of standing in the argument section of Defendants' summary judgment memorandum appear in the section challenging Plaintiffs' diversion of resources damages. *See id.* at 20–27. The only other mention of standing in the argument section is to challenge a portion of the FHOs' frustration-of-mission damages that seeks compensation for future work to combat impairment to their missions. *See id.* at 44. Defendants did not argue that the standing case law restricted Plaintiffs' ability to seek frustration-of-mission damages in general. *Id.* at 39–46. Defendants' memorandum never mentions subject-

matter jurisdiction—the only mentions of jurisdiction appear in the section challenging personal jurisdiction. *Id.* at 49–50.

Plaintiffs responded in their Opposition to Defendants' available remedies motion not by addressing their standing, but by arguing that "[b]ecause the FHOs diverted resources in response to discrimination that impaired their missions, *they are entitled to compensation for this injury*" and that "[t]he *FHOs may claim diversion-of-resources damages* even though the activities are part of their ordinary practices." Pls.' Opp'n to Defs.' Mot. for Summ. J. at 13, 16 (emphasis added), ECF 295. Because this Court had already decided that the FHOs had organizational standing in its 2019 decision, and Defendants did not ask the Court to revisit this prior ruling in their summary judgment motion on remedies (even while asking the Court to revisit its 2019 decision with respect to personal jurisdiction), Plaintiffs focused their Opposition on defending their approach to calculating diversion-of-resources and frustration-of-mission damages, rather than on reaffirming the existence of the predicate injury-in-fact. At that time, they had no reason to believe their organizational standing was under attack.

When Defendants first raised *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), in their reply brief in support of their remedies motion, they framed it as rejecting Plaintiffs' reading of *Havens*, which they described as "an essential predicate to Plaintiffs' *damages theories*." Defs.' Reply in Supp. of Mot. for Summ. J. at 1, ECF 304; *see also id.* at 2 (arguing that "Plaintiffs purport to base their damages theories on *Havens* . . . ."). Plaintiff's Surreply, which addressed Defendants' arguments based on *FDA*, was the first time since the 2018 briefing on Defendants' motions to dismiss that the FHOs had to address their organizational standing. Still, in their reply brief, Defendants had not changed their request for relief in their summary judgment motion or otherwise asked the Court to dismiss the FHOs' claims for lack of standing. Accordingly, Plaintiffs used their Surreply on the available remedies motion to respond to Defendants' new legal arguments and

address the impact (or lack thereof) of *FDA* on their claims for damages, but did not believe that they now needed to offer all evidence in support of their standing with their Surreply. Nor did they have reason to do so months later when Defendants brought a facial challenge to their standing in their Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

Thus, contrary to this Court's conclusion, Plaintiffs have not had "three separate opportunities" to submit "evidence to support their claimed injuries necessary to establish organizational standing." May 21, 2025 Order at 3, ECF 373. At best, the FHOs had one opportunity to argue their organizational standing based on the allegations in the Complaint—not based on evidence—when Defendants brought a facial challenge to the FHOs' standing in their motion to dismiss. Accordingly, the Court erred in determining that the FHOs had prior notice and opportunities to defend their organizational standing with evidence.

## II. It would be clear error and manifest injustice for the Court to convert Defendants' facial challenge into a factual challenge without affording the FHOs full and fair notice and opportunity to submit evidence in support of their organizational standing.

Because, as outlined above, the FHOs have not had a full and fair prior opportunity to present all evidence in support of their organizational standing, if the Court now wishes to convert Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction from a facial challenge into a factual one, it should afford the FHOs an opportunity to submit all evidence in support of their standing. Before courts can rule on a factual challenge to plaintiffs' standing, they must afford plaintiffs a fair opportunity to be heard. Failure to do so is not only legal error, but would constitute manifest injustice by depriving Plaintiffs of the chance to offer all their evidence in support of their allegations of standing. This is particularly so here given that the FHOs would offer additional evidence explaining how Defendants' discriminatory conduct harmed their missions if provided the chance.

### A. Failing to give the FHOs a full and fair opportunity to be heard on Defendants' factual challenge to their standing constitutes clear error that, if uncorrected, will lead to manifest injustice.

In resolving a factual challenge to standing, courts must give the non-moving party "the opportunity to be heard"—whether through an evidentiary hearing or through submission of evidence. *In re Marriott Int'l, Inc.*, 626 F. Supp. 3d at 831 (citing 5B Charles Alan Wright, Arthur R. Miller, and A. Benjamin Spencer, *Federal Practice and Procedure* § 1350 (3d ed. 2022)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("A trial court may then go beyond the allegations of the complaint and *in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations." (emphasis added)); *see also Berrios v. Dep't of Army*, 884 F.2d 28, 33 (1st Cir. 1989) ("Where the defendant has challenged the plaintiff's assertion of federal jurisdiction under Rule 12(b)(1), the court should give the plaintiff an opportunity to present facts in support of his jurisdictional contention."). "Declarations, deposition transcripts, and other materials in the record may satisfy this 'opportunity to be heard' requirement—in addition to serving as the basis for the factual resolution." *In re Marriott Int'l, Inc.*, 626 F. Supp. 3d at 831 (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1232 (11th Cir. 2021)); *Berrios*, 884 F.2d at 33 ("The facts [supporting subject-matter jurisdiction] may be presented by affidavit or by deposition or in an evidentiary hearing."); *Loc. 336, Am. Fed'n of Musicians, AFL-CIO v. Bonatz*, 475 F.2d 433, 437 (3d Cir. 1973) ("[T]he record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention."); *see also Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 494 (D.C. Cir. 2005) (noting that a court "may *sua sponte* seek supplemental submissions after oral argument if it determines that more information is necessary to satisfy itself that a petitioner has Article III standing" (collecting cases)).

Here, Plaintiffs were not given an opportunity to be heard. Based on Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, which expressly brought a facial challenge and argued that *FDA* was a monumental *legal* shift in standing jurisprudence, the FHOs had no reason to believe Defendants were bringing a factual challenge to their standing. Only at the May 15 hearing did Defendants argue for dismissal based on evidence. Notably, Defendants never cited this evidence in their motion to dismiss briefing. Although Plaintiffs attempted to respond to this newly raised evidence as best they could in the moment of oral argument, while also strongly objecting to its introduction, given the lack of notice and Defendants' explicit characterization of their motion to dismiss as a facial challenge, Plaintiffs did not expect and did not come prepared for an evidentiary hearing. Converting Defendants' motion to dismiss to a factual challenge, without affording Plaintiffs the opportunity to offer evidence, is both legal error and manifestly unjust.

Given that Defendants' challenge to the FHOs' standing is based almost entirely on the *FDA* case that was decided years after Plaintiffs filed their complaint and briefed the motions to dismiss in 2018, and after the close of several phases of discovery, to the extent the Court believes *FDA* has altered the legal landscape on organizational standing and that this is now a factual challenge, Plaintiffs should be afforded an opportunity to present evidence in light of this change. The Court of Appeals for the Sixth Circuit faced this issue head on in the context of evaluating a fair housing organization's standing after the issuance of *FDA*. *See Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living, LLC*, 124 F.4th 990, 993 (6th Cir. 2025). In *Fair Housing Center of Metropolitan Detroit*, the Sixth Circuit vacated the district court's judgment, which pre-dated *FDA*, and remanded the case for further discovery and argument on standing. *Id.* The Sixth Circuit explained that "[w]here intervening Supreme Court authority impacts 'the relevant [legal] inquir[y],' such that the plaintiff lacked an opportunity to appropriately 'tailor[ ]' its discovery, remand may be appropriate." *Id.* (quoting *Lindke v. Freed*, 114 F.4th 812, 820 (6th Cir. 2024)). The court reasoned that "the evidentiary

record on" the issue of standing was "sparse," which was "understandable, as the Center did not have reason to believe, prior to this appeal, that it might need to collect evidence of informational injury to establish standing." *Id.* It explained that the remand would "ensure that the Center has a fair opportunity to develop the record on the defendants' alleged interference with the Center's core business activities, including the alleged informational injury." *Id.*; *see also Fair Hous. Ctr. of Metro. Detroit v. Am. House Grosse Pointe, LLC*, No. 23-2051, 2025 WL 66747, at *1 (6th Cir. Jan. 10, 2025) (relying in *Singh* and vacating and remanding case to district court to further develop the record regarding the plaintiff fair housing organization's standing).

Here too, the evidentiary record in this case was all developed prior to the Supreme Court issuing its decision in *FDA*. If this Court believes that *FDA* has altered the legal bases for standing as articulated in this Court's 2019 decision, it should afford Plaintiffs the opportunity either to amend their Complaint or, if converting Defendants' motion to dismiss to a factual challenge, to supplement the evidentiary record in this case in light of that change.

**B. If given the proper notice and opportunity to be heard, the FHOs would supplement the record with additional evidence of their standing.**

If the Court had afforded the FHOs an opportunity to be heard on a factual challenge to their standing, they would have provided additional evidence in support of their standing—not merely evidence in support of their entitlement to specific forms of relief (the focus of the summary judgment briefing on remedies). The FHOs would have offered declarations, and supporting documentation, explaining how the presence of poorly maintained and marketed BANA REOs in communities of color in which they devote significant time and resources working to stabilize, integrate, and promote homeownership, harmed and threatens to continue to harm this work, which is critical to their missions. For example, they would have explained how their counseling work is directly harmed by Defendants making housing in communities of color unavailable or less desirable through their poor maintenance and marketing. They would have explained how Defendants'

discriminatory practices led to many REOs becoming investor-owned properties, which harms the FHOs' work to stabilize communities of color through programs focused on increasing homeownership. They would have discussed in greater detail *how* Defendants' conduct directly undermined the many investments they have made in the communities of color with at-issue BANA REOs (investments alleged in the complaint and listed in their interrogatory answers, *see* ECF 295-23 & 295-24). In other words, they would have offered information confirming how Defendants' conduct directly harmed the FHOs' work in furtherance of their missions—their boots-on-the-ground work stabilizing and promoting communities of color, increasing homeownership, and counteracting negative stereotypes about these communities.[3]

Plaintiffs offer an example of how these declarations would further support the FHOs' standing by attaching the Declaration of John Petruszak, the Executive Director of South Suburban Housing Center ("SSHC"). *See* Ex. A. Mr. Petruszak's declaration discusses the core programs and activities SSHC operates in furtherance of its mission and how Defendants' discriminatory conduct directly harmed this work. Ex. A at ¶¶ 2-10. In particular, Mr. Petruszak discusses how Defendants' poor maintenance and marketing of REOs in communities of color in the south suburban Chicago metropolitan area and in the adjacent northwest Indiana area undermined SSHC's ongoing work in these areas to promote stable, diverse communities because Defendants "exacerbated the market distress SSHC was actively fighting to redress, resulting in prolonged abandonment and devaluation in these communities." *Id.* ¶ 6. Defendants' conduct thus "caused these homes to become

[3] Although the FHOs submitted declarations in opposition to Defendants' summary judgment motion on remedies, these declarations did not focus on evidence in support of organizational standing. Because the FHOs' standing was not directly challenged in Defendants' summary judgment motion and this Court had previously found the FHOs had standing under *Havens* to pursue their claims, the declarations the FHOs submitted in response to Defendants' Motion addressed Defendants' specific challenges to their records of diversion of resources, but did not include detailed explanations of how Defendants' conduct harmed their missions and thereby required them to divert resources to counteract Defendants' discrimination. *See* ECF 295-2 through 295-21.

undesirable to anyone except large investors who purchased them at bargain prices, made minimal repairs, and then charged exorbitant rental rates to former owner families that had been displaced." *Id.*

For example, Mr. Petruszak highlights a BANA REO in a majority African-American community in Dolton, Illinois that SSHC visited in August 2012. *Id.* ¶ 7. SSHC identified eight deficiencies during that visit. *Id.* According to publicly available records, BANA sold this home for only $28,000 in September 2012, whereas most of the surrounding properties, that were well-maintained, were valued at more than $100,000 at the time. *Id.* This is just one example of how Defendants' racially disparate maintenance and marketing of their REOs in communities of color "resulted in devaluation, which, in turn, had a destabilizing effect on the community." *Id.*

Since 2008, SSHC has focused a great deal of its work on promoting stable, diverse communities in neighborhoods of color in Dolton, as well as in other cities within its service area most impacted by the foreclosure crisis, including through mortgage distress and down payment assistance grants. *Id.* ¶ 9. The eight BANA REOs that SSHC investigated in majority African-American communities in Dolton had an average of 8.5 deficiencies each. *Id.* As Mr. Petruszak attests, "[t]he presence of these poorly maintained homes, and the negative ripple effects they have on the surrounding community, in terms of home values and neighborhood stigma, directly harms our work aimed at stabilizing these communities." *Id.* Mr. Petruszak further describes how Defendants' conduct "undermined our efforts to promote and stabilize communities of color in our service area through housing counseling and grants intended to promote homeownership and keep people in their homes, by making the REOs they were responsible for less desirable." *Id.* ¶ 10. The poor maintenance of Defendants' REOs in the communities of color that SSHC visited made its "work promoting homeownership in these communities much more difficult" because it "not only devalues surrounding properties and reinforces negative stigma about the communities, but it

decreases the housing stock available to the prospective homebuyers that [SSHC] counsel[s]." *Id.* Defendants' discrimination thus "directly interfered with SSHC's core mission to stabilize housing values, foster integration, increase, through counseling efforts, opportunities for first time homebuyers, and save distressed homeowners from foreclosure in the recovering communities of color in [its] service area." *Id.* ¶ 8. If given the opportunity, Plaintiffs would submit additional declarations from the FHOs in support of their organizational standing in this case.

The injuries described in Mr. Petruszak's declaration will come as no surprise to Defendants. They are the same types of harm to the FHOs' missions that Professor Stacy Seicshnaydre opines about in her expert report before discussing how these harms can be remedied and the costs involved in doing so. *See, e.g.*, ECF 295-22 at 22 ("[D]iscrimination that perpetuates neighborhood stereotypes based on race profoundly impairs the FHOs' services promoting equal housing markets, fair housing choice, and integration, thereby frustrating each of their missions," since "FHOs are hindered in their mission of working to promote every neighborhood as one of opportunity when Defendants transform stereotype into reality . . . ."); *id.* at 25 ("Defendants impaired Plaintiff FHOs' services that promote housing choice unimpeded by discrimination and segregation by reinscribing unequal neighborhood conditions that make integration infeasible and elusive."); *id.* at 28 ("Defendants' discriminatory REO maintenance and marketing practices, if proven, have set Plaintiffs back in their services and efforts to expand housing choices, stabilize neighborhoods, and narrow racial homeownership and wealth gaps. Neighborhood discrimination undermines the FHOs' services promoting housing choice and equal security and opportunity for homeowners in Black neighborhoods.").

Because Defendants never offered any evidence contradicting Professor Seicshnaydre's opinions that the FHOs' mission-central work and services are harmed by racially discriminatory REO maintenance and marketing (Defendants offered not a single expert on how FHOs operate or

accomplish their missions),[4] Plaintiffs had no reason to put forth detailed evidence expanding on Professor Seicshnaydre's opinions about the ways in which the FHOs were harmed in response to a summary judgment motion on remedies—particularly since they did not believe they were relitigating the issue of standing, which had been resolved years earlier. *See March for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128, 1139 (D. Idaho 2024) (holding that FDA "did not question—and, indeed, approvingly cited—many other cases" that recognize the type of cognizable injury to organizations the courts have long recognized under the Fair Housing Act). But to the extent the Court believes additional evidence is now required to establish standing, Plaintiffs should be afforded the opportunity to present that evidence.

The evidence Plaintiffs would have submitted in response to a factual challenge to their standing would have been similar to what the FHO plaintiffs in *National Fair Housing Alliance v. Deutsche Bank National Trust*, No. 18 CV 839 (N.D. Ill. 2018), produced in that case and which the

---

[4] At the May 15 hearing, Defendants relied heavily on a rebuttal expert report from economist Professor Morris Davis in response to reports submitted by Plaintiffs' experts Dr. Elizabeth Korver-Glenn, Albert Poche, and JoAnne Poole. Defendants argued that Professor Davis's report shows that the presence of BANA REOs in a community did not lead to a decline in home values or racial integration. ECF 289-3. As Plaintiffs have previously pointed out, however, Professor Davis's analyses are deeply flawed: he fails to use actual sales prices in determining home value and fails to control for any variable in his comparative analyses beyond the presence of a BANA REO. Significantly, for example, he fails to consider whether there were REOs owned by other banks in the neighborhoods he uses as comparators. He also fails to consider whether there are other differences between the at-issue and comparator neighborhoods he uses, such as differences in foreclosure or owner-occupancy rates. *See* ECF 295 at 30 n.12. And he even acknowledges that his analyses were purely "illustrative" and very "high-level," rather than the type of "careful and robust empirical work" that he believed necessary in this case. ECF 289-3 at ¶ 70. Despite these flaws, Professor Davis's analyses still find that the gap between home values in communities of color that had at least one BANA REO and nearby neighborhoods without BANA REOs widened during the period of examination. He also found that BANA REOs in communities of color spent an average of 62 more days on the market that BANA REOs in majority white neighborhoods. *See* ECF 289-3 at 36 (Figure 1 demonstrating that the gap in home value between the "at-issue" and "nearby" neighborhoods widened from $4,657 in 2011 to $12,180 in 2021, with "at-issue" neighborhoods trailing); *id.* at 50 (Figure 10). At most, Professor Davis's opinions could create a factual dispute about the measure of the harm caused by Defendants' legal violations that the jury can consider along with Plaintiffs' competing evidence from their experts and the FHOs themselves.

FHO Plaintiffs here previously referred to in their Second Notice of Supplemental Authority, ECF 361, in which they pointed to the evidence in support of standing that the *Deutsche Bank* plaintiffs—17 of whom are also Plaintiffs here—presented in response to the factual challenge to standing in that case, "as opposed to the facial challenge" asserted in the present case. *See id.* at 2 n.1 (citing ECF 435-1 from the *Deutsche Bank* docket).[5] This evidence submitted in *Deutsche Bank*, detailing how the presence of disparately maintained and marketed REOs in communities of color harmed the mission-critical work of 17 FHOs that are also Plaintiffs here, is important for two reasons: (1) it directly supports the standing of the 17 common FHO plaintiffs in the present case (since the frustration-of-mission harms caused to the FHOs by poorly maintained and marketed BANA REOs are not meaningfully different from the harms caused by poorly maintained and marketed Deutsche Bank REOs); and (2) it shows the types of evidence Plaintiffs here would have submitted in response to a factual challenge to their standing.

Providing the FHO Plaintiffs a full and fair opportunity to submit evidence in response to a factual challenge to their standing would not require further discovery. Given the broad scope of the most recent discovery period in this case, there is no reason Defendants could not have deposed all 20 FHOs to inquire about their allegations relevant to standing. Defendants instead chose to depose only four FHOs. Similarly, Defendants' interrogatories asked Plaintiffs to "identify and describe the legal remedies to which You claim to be entitled in this Lawsuit," but did not ask Plaintiffs to state all facts in support of their organizational standing. *See* Defs.' Interrog. No. 1 to Pls., ECF 295-23. Defendants had the opportunity to dig deeper into Plaintiffs' allegations regarding standing, but did

[5] To eliminate any doubt, Plaintiffs hereby incorporate by reference ECF 435-1 from the *Deutsche Bank* docket and all of the record evidence incorporated therein, including the *Deutsche Bank* Plaintiffs' Local Rule 56.1(b)(3) Statement of Additional Material Facts, *Deutsche Bank*-ECF 361, and the exhibits to that document.

not take it. Plaintiffs should be permitted to offer evidence to oppose a factual challenge to their standing, without the need to reopen discovery.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion and, to the extent it intends to convert Defendants' Motion to Dismiss into a factual challenge to the FHOs' standing, revise its May 21, 2025 Order to permit the FHOs to submit supplemental briefing and evidence in support of their standing. Should the Court treat Defendants' Motion to Dismiss as a facial challenge, but determine that the FHOs' allegations are insufficient to support standing, Plaintiffs maintain their request for an opportunity to amend their Complaint to further allege their bases for organizational standing in light of the intervening *FDA* decision.

Dated: May 29, 2025

Respectfully submitted,

*/s/ Jessica P. Weber*

Jessica P. Weber (Fed. Bar No. 17893)
Andrew D. Freeman (Fed. Bar No. 03867)
Monica R. Basche (Fed. Bar No. 20476)
Lauren A. DiMartino (Fed. Bar No. 22046)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
jweber@browngold.com
adf@browngold.com
mbasche@browngold.com
ldimartino@browngold.com

Morgan Williams (*pro hac vice*)
National Fair Housing Alliance
1101 Vermont Avenue, NW, Suite 710
Washington, DC 20005
Phone: 202-898-1661
mwilliams@nationalfairhousing.org

*Counsel for Plaintiffs*