# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE, *et al.*, | |
| v. | Civil Action No. SAG-18-1919 |
| BANK OF AMERICA, N.A., *et al*. | |

## MEMORANDUM OPINION

In this case, which has been pending in this Court for approximately seven years, a group of plaintiffs asserts that Bank of America, N.A. ("BANA") and its servicer, Safeguard Properties Management, LLC ("Safeguard") (collectively, "the Defendants"), discriminated in their maintenance and marketing of real estate owned properties ("REOs") in a manner that violated the Fair Housing Act ("FHA"). On July 21, 2025, this Court entered a Memorandum Opinion and Order effecting several rulings. ECF 380, 381. First, in relevant part, this Court considered the Supreme Court's ruling in *Food and Drug Administration v. Alliance for Hippocratic Medicine* ("*Hippocratic Medicine*"), 602 U.S. 367 (2024) and determined that the twenty Organizational Plaintiffs had not pleaded facts establishing their standing to sue.[1] Second, because the three

---

[1] This Court will refer to the individual homeowner plaintiffs as "Individual Plaintiffs," the coalition of fair housing advocacy groups as "Organizational Plaintiffs," and the Individual Plaintiffs and Organizational Plaintiffs collectively as "Plaintiffs." The twenty Organizational Plaintiffs are: National Fair Housing Alliance ("NFHA"); Housing Opportunities Project for Excellence, Inc.; Metro Fair Housing Services, Inc.; North Texas Fair Housing Center; Fair Housing Center of West Michigan; Fair Housing Continuum, Inc.; South Suburban Housing Center; H.O.P.E. Inc. d/b/a Hope Fair Housing Center; Metropolitan Milwaukee Fair Housing Council; Fair Housing Center of Central Indiana; Denver Metro Fair Housing Center; Fair Housing Opportunities of Northwest Ohio, Inc. d/b/a Toledo Fair Housing Center; Louisiana Fair Housing Action Center; Fair Housing Advocates of Northern California; Housing Research and Advocacy Center d/b/a Fair Housing Center for Rights and Research; Fair Housing Center of Northern Alabama; Miami Valley Fair Housing Center; Connecticut Fair Housing Center; Fair Housing

Individual Plaintiffs retained standing to sue, this Court considered the remaining motions bearing on the merits of the case, including Defendants' Cross-Motion for Summary Judgment on Burden-Shifting Frameworks, ECF 299. This Court determined that, as to the Individual Plaintiffs' discrimination claims, summary judgment in Defendants' favor was warranted because Plaintiffs collectively had failed to satisfy their burden at step three to show a less discriminatory alternative practice that would be equally effective in serving Defendants' legitimate business goals. Plaintiffs also had not advanced evidence of pretext to support their disparate treatment claims and meet their step three burden. Even after that summary judgment ruling, the Individual Plaintiffs retain viable nuisance claims in this case. This Court has reserved on the issue of whether it will exercise its supplemental jurisdiction to hear those claims.

Currently pending before this Court is Plaintiffs' Motion for Leave to File First Amended Complaint, ECF 388. Defendants opposed the motion, ECF 392, and Plaintiffs filed a reply, ECF 393. This Court has carefully reviewed the filings and has determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Plaintiffs' Motion will be denied and this Court will decline to exercise supplemental jurisdiction over the Individual Plaintiffs' nuisance claims. This opinion and its accompanying order will give all Plaintiffs a final judgment for purposes of appeal as to the federal discrimination claims.

## I.    PROCEDURAL BACKGROUND

The factual background has been discussed extensively in prior opinions and is incorporated by reference herein. The facts most relevant to the instant motion, however, are procedural and are reviewed below.

---

Council of Greater San Antonio; and Fair Housing Center of the Greater Palm Beaches, Inc. ECF 1.

Plaintiffs initially filed an administrative complaint against BANA with the Department of Housing and Urban Development ("HUD") on September 25, 2012. ECF 169-15. Plaintiff NFHA and other groups also filed administrative complaints against other banks, including U.S. Bank. *See NFHA v. U.S. Bank N.A.*, No. 01-12-0283-8 (HUD Jan. 8, 2016), ECF 167-6 ("*U.S. Bank*"). In January 2016, HUD concluded that there was "no reasonable cause to believe that [U.S. Bank] engaged in a pattern or practice of discriminatory treatment as alleged, engaged in individual instances of discrimination as would be indicated by testing, or violated Sections 804(a), (b), (c), or (d) of the Fair Housing Act." *Id.* at 30. HUD's conclusion rested largely on its determination that the plaintiffs' testing methodology was fatally flawed. *Id.* at 25–26.

After HUD's decision in *U.S. Bank*, Plaintiffs withdrew their administrative complaint against BANA and filed this lawsuit on June 26, 2018. ECF 1. Plaintiffs' claims include FHA claims alleging violations of 42 U.S.C. § 3604(a) (Count I), 42 U.S.C. § 3604(b) (Count II), 42 U.S.C. § 3605 (Count III), 42 U.S.C. § 3601 (Count IV), 42 U.S.C. § 3617 (Count V), and private nuisance claims by the Individual Plaintiffs (Counts VI & VII). *Id.* Investigations by NFHA and other fair housing organizations into maintenance and marketing of REO properties by other lenders and servicers resulted in two other federal lawsuits, *NFHA v. Fannie Mae*, No. C 16-6969 (N.D. Cal. 2018) and *NFHA v. Deutsche Bank*, No. 18-cv-839 (N.D. Ill. 2018).

The original district judge assigned to this case, Judge Catherine C. Blake, denied Defendants' initial motions to dismiss, which contained arguments regarding the sufficiency of Plaintiffs' pleadings and a variety of legal questions on standing, personal jurisdiction, and timeliness. ECF 66, 67. Judge Blake then ordered phased discovery focused on Plaintiffs' testing methodology. ECF 115, 117. Upon the conclusion of two phases of discovery, Defendants filed several motions, including motions for summary judgment challenging the methodology and

validity of the Plaintiffs' investigation under step one of the disparate impact framework. ECF 166, 167. After these motions were filed, but before they were decided, this case was reassigned to the undersigned judge. Paperless Entry, Jan. 18, 2023. This Court denied Defendants' motions for summary judgment, concluding that Plaintiffs had adduced "sufficient evidence to create a genuine issue of material fact as to whether a statistical disparity exists in the defendants' maintenance of the properties at issue." ECF 235 at 29. At that time, this Court specifically noted, however, "that steps two and three of the [FHA's] disparate impact framework" had not "yet been fully explored through discovery," and contemplated "subsequent motions for summary judgment on other issues." *Id*. at 16 n.4. The Court ordered discovery on these issues as well as "Plaintiffs' claimed damages, the legal remedies to which the Plaintiffs claim to be entitled . . . and the legal or factual theories underlying those claimed damages or remedies." ECF 251.

After another round of discovery, the parties filed cross-motions for summary judgment, ECF 285, 287, 299, on steps two and three of the "burden-shifting framework" for disparate impact claims set forth by the Supreme Court in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ("*Inclusive Cmtys.*") and for disparate treatment claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Court held a hearing on these motions on January 27, 2025. ECF 347. Defendants also filed an additional motion for summary judgment relating to recoverable damages, ECF 288, and the parties filed motions regarding the admissibility of expert opinions, ECF 310, 314.

While these motions were pending, and following the Supreme Court's decision in *Hippocratic Medicine* on June 13, 2024, Defendants moved to dismiss under Rule 12(b)(1), asserting a facial attack on Organizational Plaintiffs' standing. ECF 343. As noted above, considering the Complaint's allegations under the *Hippocratic Medicine* standard, this Court

concluded that the Organizational Plaintiffs had not alleged sufficient facts to establish their standing to sue and dismissed their claims without prejudice. Because the Individual Plaintiffs' federal discrimination claims remained viable, this Court considered the parties' summary judgment motions, applying the burden-shifting frameworks and ultimately concluding that summary judgment should be granted for Defendants as to Plaintiffs' federal discrimination claims. The instant Motion for Leave to Amend ensued, in which the Organizational Plaintiffs seek to amend the Complaint to incorporate additional facts that, in their view, will establish their standing to sue.[2]

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* Because the Fourth Circuit's policy is "to liberally allow amendment," *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010), leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986) (footnote omitted) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

---

[2] For purposes of this motion, this Court assumes, without deciding, that the proposed First Amended Complaint would suffice to give the Organizational Plaintiffs standing to sue. This Court's prejudice and futility determinations do not turn on the adequacy of the new factual allegations.

### III.    ANALYSIS

Applying those standards reveals two reasons to deny leave to amend. First, Defendants would suffer prejudice from the grossly belated amendment. "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. The *Laber* court drew a distinction between two situations: a prejudicial amendment that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial" or a non-prejudicial amendment that "merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* (quoting *Johnson*, 785 F.2d at 510) (alteration in original). This case falls between those two extremes. While no trial date has been set, years of discovery have already concluded, and the proposed amendment raises new legal and factual contentions that would require reopening of discovery and re-briefing of both a motion to dismiss and summary judgment. *Laber* also noted, citing *Adams v. Gould,* 739 F.2d 858, 864 (3d Cir. 1984), that where, as here, summary judgment has been granted before plaintiffs sought leave to amend, prejudice is easier to find. *See* 438 F.3d at 427 ("The further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant").

Of course, in this case, as a result of its unique procedural posture, summary judgment has not been entered against the Organizational Plaintiffs, but only the Individual Plaintiffs on their discrimination claims. No daylight separates the factual and legal contentions those two groups asserted in response to the summary judgment motion, and it is clear that the ruling would have been equally applicable to both if the Organizational Plaintiffs had not been dismissed for lack of standing.

Plaintiffs contend that *Laber*, which also involved an effort to amend the complaint at the summary judgment stage, should govern this Court's disposition here. In that case, the Fourth Circuit first noted that the theory Laber initially pled "presented a close enough question" that the court had to clarify its own case law, an indication that he had not omitted the proposed amended theory from the original complaint in bad faith. *Id.* at 428. Although this Court similarly considers the intervening clarification from *Hippocratic Medicine* as an indication of lack of bad faith, the other considerations that the Fourth Circuit cited in allowing Laber to amend are not present in this case. First, the *Laber* court determined that there would be no prejudice to the defendant from amendment because there had been no significant discovery and no new facts put at issue in the amended complaint. *Id.* Here, the parties have undertaken several years of sequenced discovery, and the proposed amended complaint introduces significant new facts about, for example, counseling undertaken by the Organizational Plaintiffs. Additional discovery would be inevitable. Second, the *Laber* court found that the amended complaint was not futile. *Id.* This case is in a different posture, which will be addressed below. It is clear, however, that this case is readily distinguishable from *Laber* in terms of the prejudice that will accrue. While conceding that this case falls between the two *Laber* examples, it lies far closer to the prejudicial end of the spectrum. Accordingly, it is appropriate to deny leave to amend because prejudice is present.

Amendment would also be futile. The claims advanced by the Organizational Plaintiffs are the same discrimination claims that the Court deemed subject to summary judgment in Defendants' favor in light of the burden-shifting framework. While the proposed amendments to the Complaint are designed to add allegations to meet the organizational standing doctrine set forth in *Hippocratic Medicine*, Plaintiffs do not even contend that the proposed Amended Complaint would have any effect on this Court's summary judgment ruling against them. Instead, they merely contend that the Amended Complaint would survive a motion to dismiss and that it should go through that process before summary judgment is inevitably granted. ECF 388 at 4–5.

As the Fourth Circuit has stated, a proposed amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510; *see also* 6 Arthur R. Miller et al., *Federal Practice and Procedure* § 1487 (3d. ed. June 2024 Update) ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." (footnotes omitted)).

This review for futility "does not involve 'an evaluation of the underlying merits of the case.'" *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 522 (D. Md. 2014) (quoting *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, Civ. No. RDB-12-02109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013)). "To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, Civ. No. CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (alteration in original) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911 (1980)).

In this case, no conjecture is needed. The Organizational Plaintiffs proceeded through discovery and summary judgment briefing alongside the Individual Plaintiffs and collectively filed the summary judgment motions this Court decided in July. But for their lack of standing, summary judgment would have been granted against the Organizational Plaintiffs as well. Because the proposed amendments to the Complaint address only the standing deficiencies and do nothing to rectify the flaws in the case leading this Court to grant summary judgment, amendment is futile.

Finally, Plaintiffs contend that the interests of judicial efficiency would be served by allowing the Organizational Plaintiffs to build their record on standing now to "avoid[] seriatim appeals." ECF 393 at 5. Whether or not seriatim appeals would ensue, of course, depends on the outcome of the first appeal. The dispositive issue in this case is the step three summary judgment ruling, not the standing ruling. Should the Fourth Circuit disagree with the summary judgment ruling, the case will be remanded to this Court, allowing this Court to revisit the issue of amendment with a different view of its futility. Of course, in that circumstance, it is conceivable that the eventual losing party could file another appeal at the conclusion of the litigation.

On the other hand, should the Fourth Circuit affirm the summary judgment ruling, it would presumably also affirm the decision to deny leave to amend on futility grounds. No further appeal would ensue, and the parties (and the Court) would not have been subjected to an additional round of motions to dismiss, discovery, and summary judgment. The instant ruling will serve judicial efficiency by rendering those efforts unnecessary while permitting a full record for the Fourth Circuit to consider both the summary judgment ruling and the denial of leave to amend.[3]

---

[3] The record, of course, includes the proposed Amended Complaint and its various factual assertions.

To expedite that consideration, this Court will decline to exercise supplemental jurisdiction over the remaining state law nuisance claims asserted by the Individual Plaintiffs. The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* (footnote omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); 28 U.S.C. § 1367(c)(3) (permitting district courts to decline to exercise supplemental jurisdiction over state-law claims when all federal-law claims have been dismissed). It certainly cannot be said that the federal-law claims have dropped out at the "early stages" of this litigation. But this Court has spent no time whatsoever, over the past seven years, considering or deciding issues relating to the Individual Plaintiffs' nuisance claims. The parties have focused entirely on the federal discrimination claims, meaning that this Court will have no advantage over any other court in bringing the nuisance claims to a fair and expeditious resolution. And declining the exercise of jurisdiction will permit the parties to get the important issues relating to the federal claims before an appellate court in a speedier fashion. Weighing all of the *Carnegie-Mellon* factors, then, this Court will decline the exercise of supplemental jurisdiction. The Individual Plaintiffs are free to refile their state law nuisance claims in state court.

## IV.    CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Leave to File First Amended Complaint, ECF 388, is DENIED. This Court will decline to exercise supplemental jurisdiction over the remaining state law nuisance claims, making the accompanying order a final judgment for purposes of appeal as to the federal discrimination claims. The Clerk will be directed to CLOSE this case.

A separate order follows.


Date: October 16, 2025                                    _____/s/_____
                                                          Stephanie A. Gallagher
                                                          United States District Judge

11